2003 UT 14

### ARMED FORCES INSURANCE EXCHANGE, a Kansas corporation, Plaintiff and Appellee,

v.

### Judi HARRISON, an individual, Restoration Systems, Inc., a Utah corporation, and John Does 1–5, Defendants and Appellant.

No. 990662.

Supreme Court of Utah.

April 25, 2003.

Richard A. Van Wagoner, David L. Pinkston, D. Jason Hawkins, Salt Lake City, for plaintiff.

Joseph C. Rust, Salt Lake City, for defendant.

DURRANT, Associate Chief Justice.

¶ 1 In this appeal, we are called upon to review a trial court's finding of fraud against Judi Harrison, president of Restoration Systems, Inc. ("RSI"). Following a five-day bench trial, the trial court found RSI liable to Armed Forces Insurance Exchange ("AFIE") on several theories, including fraud, and awarded damages. Shortly afterwards, the trial court entered a judgment against Harrison, finding her personally liable to AFIE on the claim of fraud, and awarded damages. Only Harrison appeals from the court's judgment. She asserts numerous points of error in her attack on the trial court's conclusion that she is liable for fraud. We remand to the trial court for it to complete its findings of fact.

## BACKGROUND

¶ 2 " 'On appeal from a bench trial, "[f]indings of fact ... shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." We relate the facts accordingly, granting due deference to the trial court's resolution of factual disputes.' " *Roderick v. Ricks*, 2002 UT 84, ¶ 2, 54 P.3d 1119 (alteration in original) (quoting *Tanner v. Carter*, 2001 UT 18, ¶ 2, 20 P.3d 332 (quoting Utah R. Civ. P. 52(a))).

### I. THE METCALF PROJECT

¶ 3 On May 11, 1993, a fire occurred at the home of Colonel Donald and Sidella Metcalf. In extinguishing the fire, the fire department cut apart the roof and doused the house with

water, causing water damage to the interior of the home. The Metcalfs, who held a first-party homeowner's insurance policy with AFIE, notified AFIE of their loss. After receiving this notification, AFIE retained a local adjusting company, C.W. Reese Co. ("Reese"), to serve as its agent for this claim.

¶ 4 After consulting with Reese, Colonel Metcalf entered into a contract with RSI to do the restoration work. RSI was, at the time, a corporation engaged in the restoration of damaged homes and buildings. Harrison was the president, director, and sole shareholder of RSI. Initially, RSI estimated that it could restore the structure and contents of the Metcalfs' home for $89,305.76. Subsequently, RSI submitted several additional estimates to AFIE through Reese, requesting payment for additional costs associated with the restoration of the Metcalfs' home. In total, RSI billed AFIE $311,342.85 for work done on the Metcalfs' home. Of this billed amount, AFIE paid $272,638.17. In addition to the amount billed to AFIE, RSI billed the Metcalfs directly in the amount of $15,492.50 for certain upgrades RSI provided in addition to the restoration work.[1] By combining RSI's billings to the Metcalfs and to AFIE, the trial court determined that RSI billed a total of $326,335.37[2] for restoration work on the Metcalfs' home.

¶ 5 RSI submitted each of its estimates to Greg Peters, an adjustor for Reese, AFIE's local agent. After reviewing each estimate, Peters recommended that AFIE reimburse RSI for the full amount. AFIE requested Peters to review the amounts claimed on the February 1994 and July 1994 estimates and to check for duplications. Following his examination of the estimates and invoices provided by RSI, including three subcontractor invoices fabricated by RSI, Peters found no duplication and recommended that AFIE provide full payment. AFIE sent checks based on these recommendations. Additionally, three of AFIE's own employees also reviewed the RSI estimates and failed to discover any double billing, although one employee did discover a nine dollar mistake.

¶ 6 Sometime in December 1994, RSI left the Metcalf job. However, some of the restoration work was not yet completed, so the Metcalfs retained other contractors to correct and finish the restoration of their home. In February 1995, AFIE sued RSI and Harrison under several contract and tort theories.

¶ 7 During the initial discovery period, RSI claimed that several pertinent documents relating to the Metcalf project were taken in a burglary. These documents included a Job Cost Detail Report ("JCDR"), which was an internal document maintained by RSI for each of its projects to keep a record of the actual costs associated with that project. Though it claimed that certain source documents were lost as a result of the burglary, RSI was nevertheless able to recreate the JCDR in June 1995. AFIE contended that the burglary had been staged. During discovery, Harrison and RSI provided this recreated JCDR and the source documents they claimed to have used in the recreation process to AFIE by August 1995. No more than a month later, when it deposed Chris Stavheim, RSI's accounting clerk, AFIE knew that the JCDR was recreated. Harrison admitted that parts of the recreated JCDR were a "best-shot effort" based on a review of the information available to them at the time of the recreation. Three of the subcontractor invoices RSI provided AFIE in support of the JCDR were fabricated by RSI.

## II. PROCEEDINGS BEFORE THE TRIAL COURT

¶ 8 On February 2, 1996, RSI and Harrison filed a motion for summary judgment against AFIE and for partial summary judg-

---

1. The Metcalfs paid $10,000 to RSI in advance for upgrade work. RSI credited the advance towards the $15,492.50, leaving $5,492.50 unpaid.

2. This is the number contained in the trial court's findings of fact. It includes a slight mathematical error, however. If we add the amount the trial court found RSI billed the Metcalfs to the amount the trial court found RSI billed AFIE, this figure should actually equal $326,835.35. The difference between these two numbers is minimal, only $499.98, and on remand the trial court should determine which figure is accurate.

ment against the Metcalfs. In this motion, RSI and Harrison argued that Harrison could not be held personally liable because she acted only in her capacity as president of RSI and was thus shielded by the corporate veil. Moreover, they asserted that no circumstances existed to justify piercing the corporate veil in order to hold Harrison liable under the equitable doctrine of alter ego. In response to this argument, AFIE and the Metcalfs contended that Harrison could be held liable for her own personal torts and that she had provided insufficient evidence to justify a grant of summary judgment in her favor on the alter ego theory. While the trial court ultimately denied RSI and Harrison's motion for summary judgment, it did conclude that "there [were] no genuine issues of material fact and defendant Judi Harrison [was] entitled to judgment as a matter of law on any claim or effort to pierce the corporate veil."

¶ 9 Following the five-day bench trial, held in March 1997, the court found RSI liable to AFIE under four different theories: fraud, breach of contract, unjust enrichment, and constructive trust. Prior to the trial court rendering judgment, Harrison filed a petition for bankruptcy protection under Chapter 7 of the United States Bankruptcy Code, which automatically stayed any legal proceeding and rendered the trial court unable to enter judgment against her. Subsequently, the bankruptcy court entered an order modifying the automatic stay, which allowed the trial court to enter its Findings of Fact and Conclusions of Law against Harrison.

¶ 10 In its Findings of Fact and Conclusions of Law, the trial court held Harrison liable for fraud only. It determined that she was jointly and severally liable with RSI to AFIE and the Metcalfs in the amount of $143,056.82 for fraud.[3] It also held Harrison jointly and severally liable with RSI to AFIE and the Metcalfs for their attorney fees and costs in the amount of $172,143.51. Additionally, the trial court found Harrison jointly and severally liable with RSI for expenses AFIE and the Metcalfs incurred for services provided by construction and forensic ac-

counting experts in the amount of $35,949. Finally, the trial court held Harrison jointly and severally liable with RSI for $5,000 in punitive damages to AFIE and $5,000 in damages to the Metcalfs for slander of title.

¶ 11 Though the trial court held RSI and Harrison jointly and severally liable, only Harrison appealed the trial court's decision. On appeal, she argues that the trial court (1) erred in denying her motion for summary judgment, (2) erred in entering a judgment of fraud against her because AFIE failed to establish the elements of fraud by clear and convincing evidence, (3) erred in entering a judgment of fraud where the court's own findings insufficiently established the elements of fraud, (4) erred in basing its findings of fraud on a document prepared after litigation commenced, (5) erred in its measure of fraud-based damages, (6) erred in assessing the same damages against her that were assessed against RSI even though she was found liable for fraud only, (7) erred in awarding attorney fees against her, (8) erred in failing to apportion attorney fees among the various causes of action, (9) erred in assessing against her AFIE's expense of retaining and consulting experts, and (10) erred in awarding expert expenses to AFIE absent compliance with Utah Rule of Civil Procedure 54(d)(2).

¶ 12 We have jurisdiction to hear this matter pursuant to Utah Code Ann. § 78-2-2(3)(j) (2002).

## ANALYSIS

### I. THE FRAUD ALLEGATIONS IN THE COMPLAINT

¶ 13 We first review the trial court's refusal to grant Harrison's motion for summary judgment. "A trial court's decision to grant or deny a motion for summary judgment is a legal one and will be reviewed for correctness. Therefore, [this issue] will be reviewed de novo, giving no deference to the trial court's conclusions." *Salt Lake City v. Silver Fork Pipeline Corp.*, 913 P.2d 731, 733 (Utah 1995) (citations omitted).

---

**3.** The trial court did not identify in its Findings of Fact and Conclusions of Law what method it

used to reach its determination of the amount of fraud-based damages.

¶ 14 Prior to trial, Harrison filed a motion for summary judgment claiming, among other things, that AFIE's complaint failed to plead fraud[4] with the factual particularity required by rule 9(b) of the Utah Rules of Civil Procedure. She now asserts that the denial of the motion was error. She argues that AFIE failed to plead fraud with particularity in its complaint against her because it focused on RSI's actions, not hers. Furthermore, she argues that any attempt in the complaint to "piggy-back" liability onto her by virtue of her corporate responsibilities should have failed absent an alter ego allegation.

¶ 15 AFIE responds that its complaint was sufficiently particular to comply with rule 9(b). Specifically, AFIE argues that it was only obligated to plead the elements and basic facts of the fraud to satisfy the particularity requirement. Additionally, AFIE asserts that it properly pleaded fraud in its complaint because Harrison is personally liable for fraudulent acts that she herself committed or that others committed at her direction.

### A. Pleading Fraud with Particularity

¶ 16 Rule 9(b) of the Utah Rules of Civil Procedure specifies that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The elements that a party must allege "to bring a claim sounding in fraud" are

(1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

*Gold Standard, Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1066–67 (Utah 1996) (citations omitted); *Educators Mut. Ins. Ass'n. v. Allied Prop. & Cas. Ins. Co.*, 890 P.2d 1029, 1032 (Utah 1995); *accord Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 800 (Utah 1991). However, the mere recitation by a plaintiff of the elements of fraud in a complaint does not satisfy the particularity requirement. In other fraud cases, " '[w]e have stressed, and continue to hold, that mere conclusory allegations in a pleading, unsupported by a recitation of relevant surrounding facts, are insufficient to preclude ... summary judgment.' " *Franco v. Church of Jesus Christ of Latter-day Saints*, 2001 UT 25, ¶ 36, 21 P.3d 198 (quoting *Chapman v. Primary Children's Hosp.*, 784 P.2d 1181, 1186 (Utah 1989)). The relevant surrounding facts " 'must be set forth with sufficient particularity to show what facts are claimed to constitute such charges.' " *Williams v. State Farm Ins. Co.*, 656 P.2d 966, 971 (Utah 1982) (quoting *Heathman v. Hatch*, 13 Utah 2d 266, 268, 372 P.2d 990, 991 (1962)).

¶ 17 AFIE failed, however, to allege in its complaint relevant facts supporting its claim that Harrison personally committed or participated in any fraudulent acts. In its complaint, AFIE's first claim for relief was fraud. This section of its complaint contains only two paragraphs, which allege as follows:

33. Defendants made false representations concerning present existing material facts, which representations they either knew to be false or were made recklessly, and defendants omitted material facts despite their duty fully to disclose, all for the purpose of inducing action on the part of plaintiff.

34. Plaintiff actually and justifiably relied upon the false representations and material omissions to its injury and detriment, in an amount to be determined at trial.

These paragraphs merely recite the elements of fraud, however, and, as we have already noted, such conclusory allegations alone fail to allege fraud with sufficient particularity. *See Franco*, 2001 UT 25 at ¶ 36, 21 P.3d 198.

---

4. In its complaint and throughout the entirety of this case, AFIE centered its arguments on common law fraud.

¶ 18 Even if we examine the complaint as a whole, it fails to recite any relevant facts connecting Harrison personally to the alleged fraud. The complaint mentions several examples of RSI's representations, but it contains nothing regarding Harrison personally making or directing others to make these representations. The only time Harrison is mentioned in the complaint at all is in one of the complaint's opening paragraphs, where she is identified as one of the parties. There she is listed as the "President and owner of RSI ... [who] is responsible for the entire business operation of RSI, oversees and is responsible for its billing practices and is personally responsible to see that the project referenced herein is and was handled professionally, honestly and with the utmost care." This allegation may be a relevant fact, but it is insufficient to support fraud liability absent other facts linking Harrison directly to the fraud.

### B. Harrison's Personal Liability for Fraud

¶ 19 Initially, we note that "[a]n officer or director of a corporation is not personally liable for torts of the corporation or of its other officers and agents merely by virtue of holding corporate office, but can only incur personal liability by participating in the wrongful activity." 3A William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 1137, at 209 (rev. ed.2002). When fraud is alleged, "a director or officer of a corporation is individually liable for fraudulent acts or false representations of *his own or in which he participates,* even though his action in such respect may be in furtherance of the corporate business." 37 Am.Jur.2d *Fraud and Deceit* § 322 (1968) (emphasis added).

¶ 20 Other states, considering the issue of corporate officer liability, have found that an officer cannot hide his or her own fraudulent acts behind the corporate veil. For example, Colorado courts hold that "[t]o permit an agent of a corporation, in carrying on its business, to inflict wrong and injuries upon others, and then shield himself from liability behind his vicarious character, would often both sanction and encourage the perpetration of flagrant and wanton injuries

by agents of insolvent and irresponsible corporations." *Snowden v. Taggart,* 91 Colo. 525, 17 P.2d 305, 307 (1932) (citation omitted). In *Mecham v. Benson,* 590 P.2d 304, 308 (Utah 1979), this court noted that a defendant, by attempting to hide behind the corporate entity, "would not exculpate himself by proving that he was acting as agent of a corporation; he would only additionally inculpate his corporate principal." Thus, Harrison can be held liable for fraudulent acts that she personally committed or in which she participated, but she cannot be held liable for fraudulent acts that she did not know of or participate in that were committed by other agents of the corporation or by the corporation itself.

¶ 21 Harrison's position as a corporate officer whose duties generally included overseeing the business activities of the corporation does not alone establish facts supporting a claim that she is *personally* liable for fraud. However, in the complaint, this is the only fact pleaded to inculpate Harrison in RSI's fraudulent activities. In its memorandum in opposition to RSI and Harrison's motion for summary judgment, AFIE had the opportunity to allege additional facts establishing Harrison's personal involvement in RSI's fraud. However, the additional facts contained in AFIE's memorandum focus exclusively on RSI's actions and do not supply any information regarding Harrison's personal participation in fraud. Standing alone, AFIE's complaint fails to allege fraud against Harrison with the particularity required by rule 9(b). Because AFIE failed to allege facts in its complaint supporting its claim that Harrison personally committed fraud or that she personally directed any fraud committed by RSI, the trial court erred in failing to grant the motion for summary judgment.

### C. Failure to Grant Summary Judgment Was Harmless Error in this Case

¶ 22 We next consider whether this error was harmless. "If the error was harmless, that is, if the error was sufficiently inconsequential that there is no reasonable likelihood that it affected the outcome of the case, then a reversal is not in order." *Price*

*v. Armour,* 949 P.2d 1251, 1255 (Utah 1997) (citing *State v. Robertson,* 932 P.2d 1219, 1227 (Utah 1997)); *see also* Utah R. Civ. P. 61 ("[N]o error or defect in any ruling or order ... by the court ... is ground for granting a new trial or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice."). In *State v. Germonto,* 868 P.2d 50, 57–58 (Utah 1993), a criminal case, the defendant argued that the trial court inappropriately denied a motion to modify an information and allowed the trial to go forward on a technically deficient charging statement. We held that "we will look to see whether the error, if any, should have been obvious and whether it was cured procedurally and thereby rendered harmless." *Id.* at 58. In effect, we are dealing with the same situation in the instant case.

¶ 23 Since AFIE's complaint failed to plead fraud with particularity, the trial court should have granted summary judgment for Harrison and dismissed the case. However, it is unlikely that the trial court's failure to take this action affected the outcome. According to rule 15(a) of the Utah Rules of Civil Procedure, "a party may amend his pleading ... by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Utah R. Civ. P. 15(a). AFIE indicated in its oral argument that it would have moved to amend its complaint had the complaint been dismissed. Under our rule, the trial court is obligated to freely allow motions to amend. Indeed, some jurisdictions hold that it is an abuse of discretion to deny such a motion. *See Caputo v. Pfizer, Inc.,* 267 F.3d 181, 191 (2d Cir.2001) (holding plaintiff should have been allowed to amend complaint to plead fraud with the particularity required by rule 9(b) of the Federal Rules of Civil Procedure).[5] Therefore, it is unlikely that the trial court's error affected the outcome of this case.

¶ 24 In addition, rule 15(b) of the Utah Rules of Civil Procedure, which provides for amendment of the pleadings to conform to the evidence, furnishes the procedural cure to the trial court's error. It states that

[w]hen issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendments of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

Utah R. Civ. P. 15(b). AFIE presented evidence at trial concerning Harrison's personal participation in fraud. Harrison responded by presenting evidence in her own defense on this issue. Since Harrison knew about the fraud allegations against her and was able to present her own evidence at trial to challenge those allegations, she was not prejudiced by the technical failings of AFIE's pleadings. While AFIE, in fact, made no motion to amend its complaint to conform to the evidence, "[t]he failure of the trial court to fully amend the pleadings to this effect is non-prejudicial." *Seamons v. Andersen,* 122 Utah 497, 502, 252 P.2d 209, 212 (1952). Because the issue was tried, it must be treated as if it were properly raised in the pleadings.

¶ 25 This result "is much preferred to the alternative of dismissal, especially where a trial has proceeded to conclusion on the existing pleadings and where the defendant has suffered no prejudice by reason of any deficiency in the pleadings." *Gill v. Timm,* 720 P.2d 1352, 1353 (Utah 1986). Thus, though the trial court erred in denying Harrison's motion for summary judgment, this error does not require us to overturn the result of the trial. It is not reasonably likely, given the amendment procedure in rule 15(a), that the trial court's error would have affected the outcome of the case. Accordingly, Harrison has suffered no prejudice because of the deficiency of the pleadings. Since the court's error was harmless, we now review Harrison's other claims of error.

---

5. Rules 9(b) and 15(a) of the Utah Rules of Civil Procedure are substantially identical to rules 9(b) and 15(a) of the Federal Rules of Civil Procedure. Thus, federal case law, though not binding, may guide our interpretation of these rules.

## II. THE TRIAL COURT'S FINDINGS OF FACT

¶ 26 Next, we turn to Harrison's arguments that the evidence presented at trial was insufficient to support the trial court's findings of fact and that the findings of fact are inadequate to support the court's conclusion that Harrison is liable for fraud. "The findings and judgment should not be disturbed unless this court can say affirmatively and with some degree of assurance that there is no reasonable basis in the evidence that could fairly and rationally support the requisite degree of proof, i.e., by clear and convincing evidence." *Lamb v. Bangart*, 525 P.2d 602, 609 (Utah 1974).

¶ 27 "A finding of fraud must be based on the existence of all its essential elements.... '[F]raud is a wrong of such nature that it must be shown by clear and convincing proof and will not lie in mere suspicion or innuendo.'" *Taylor v. Gasor, Inc.*, 607 P.2d 293, 294–95 (Utah 1980) (internal citations omitted) (quoting *Lundstrom v. Radio Corp. of Am.*, 17 Utah 2d 114, 117–18, 405 P.2d 339, 341 (1965)). Thus, to prevail against Harrison in this case, AFIE was required to present evidence that clearly and convincingly established every essential element of fraud. The trial court then had the obligation to make findings of fact regarding the essential elements of fraud that could be reviewed on appeal to determine both the adequacy of the evidence and the correctness of the court's ultimate conclusion of fraud. *See* Utah R. Civ. P. 52 (requiring "[i]n all actions tried upon the facts without a jury ..., the court shall find the facts specially and state separately its conclusions of law thereon"). Moreover, such factual findings must be complete and detailed. In this case, the trial court's findings of fact are inadequate for us to properly address the sufficiency of the evidence or the correctness of the trial court's conclusion that Harrison is liable for fraud.

¶ 28 For findings of fact to be adequate, they "must show that the court's judgment or decree 'follows logically from, and is supported by, the evidence.' The findings 'should be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on *each* factual issue was reached.'" *Acton v. Deliran*, 737 P.2d 996, 999 (Utah 1987) (emphasis added) (citations omitted). When the findings of fact are incomplete in fraud cases, we cannot adequately review the trial court's decision without overstepping our appellate authority and usurping the fact-finding responsibilities of the trial court. Thus, we have specified that

> [i]f the findings of fact in a case are incomplete, the [reviewing] court may order the trial court ... to supplement, modify, or complete the findings to make them conform to the issues presented and the facts as found from the evidence and may direct the trial court ... to enter judgment in accordance with the findings as revised.

Utah R.App. P. 30(a); *see also* 5 Am.Jur.2d *Appellate Review* § 688 (1995) ("[A] remand is necessary where the appellate court cannot get a clear understanding of the basis of the trial court's judgment from its findings."). When such a remand is ordered, "the entry of proper findings of fact and conclusions of law would be all that is required of the trial court." *Acton*, 737 P.2d at 999. "[T]he trial court may rely on the record of the original trial, provided there was full opportunity to present evidence, and no error in the exclusion or admission of evidence occurred." 5 Am.Jur.2d *Appellate Review* § 665.

¶ 29 The trial court's Findings of Fact and Conclusions of Law is a forty-four page document that includes 115 paragraphs, several of which contain multiple subparagraphs. The findings in the document focus on how RSI mishandled the project, provided unsatisfactory and unworkmanlike work, and made fraudulent representations to AFIE. For these acts, the trial court held RSI liable to AFIE for fraud, breach of contract, unjust enrichment, and constructive trust. RSI does not appeal the trial court's decision.

¶ 30 Concerning Harrison's participation in fraud, the findings of fact section leaves much to be desired. It identifies Harrison as the president of RSI and states that she was "in charge of and direct[ed] the day-to-day operations of RSI." It states that Harrison did not have power of attorney from the

Metcalfs and that she encouraged her employees to make a thirty-five percent profit. It states that Harrison authorized and approved the fabrication of three subcontractor invoices. It also states that she directed and supervised the recreation of the JCDR. These facts alone are not sufficient to support a conclusion that Harrison is liable for fraud.

¶ 31 In its conclusions of law section, the trial court includes additional findings of fact concerning Harrison. After listing examples of RSI's misconduct for five pages, the trial court makes the broad conclusion that "[v]irtually all of the foregoing was done with the knowledge of or under the direction of defendant Judi Harrison." From this key finding, the trial court makes a legal conclusion that "the evidence of fraudulent intent to make the many misrepresentations and omissions satisfies the clear and convincing evidence standard." After coming to this conclusion, the trial court includes the following summary:

> AFIE and the Metcalfs actually and justifiably relied upon the false representations and material omissions to their injury and detriment. RSI and Ms. Harrison sent out billings which they expected to induce reliance and payment. They made representations to Mr. Peters and AFIE concerning the work that was done and the amounts due and owing. They reassured Mr. Peters and AFIE. They supplied invoices, expecting to induce reliance.

Although these findings are significant, they are inadequate and incomplete in several respects.

¶ 32 First, they are inadequate because we are unable to examine whether sufficient evidence existed at trial to support a finding that "virtually all" of RSI's misconduct was known to or directed by Harrison. In order to hold Harrison liable for fraud, we must know specifically what representations she made or directed others to make. While the trial court found that Harrison participated in the recreation of the JCDR and directed the fabrication of some subcontractor invoices, they are only two actions in a long list of RSI's misconduct. By itself the finding that Harrison knew of or directed virtually all of RSI's actions does not provide sufficient detail to support the conclusion that Harrison is liable for fraud. Furthermore, some of RSI's listed misconduct constitutes nothing more than poor workmanship, and it would be relevant only to the breach of contract claim. As such it would be unrelated to Harrison's liability for fraud. Other conduct set forth in the findings of fact supports the conclusion that RSI committed fraud, but it may not be relevant to the finding that Harrison is liable for fraud. Because the trial court did not specify all of the representations that Harrison specifically participated in or directed, we cannot address Harrison's argument that the evidence was inadequate without making our own findings of fact identifying precisely which of Harrison's actions supported the conclusion that she is liable for fraud. Since it is not within our realm of authority to make such findings, we remand the case back to the trial court to make these specific findings.

¶ 33 Second, the findings are incomplete because they do not address each element of fraud as to any one of the identified representations. Absent such findings, we cannot determine, without making certain assumptions, whether the trial court appropriately held Harrison liable for fraud. There are simply no findings on any representation to AFIE for which it appears all the essential elements of fraud have been found. Besides the JCDR and the three invoices, there are no specific findings on other representations Harrison may have participated in—only a general conclusion that she knew of or directed virtually all of RSI's actions. Second, there are no findings that AFIE relied on the specific representations in which Harrison participated. Finally, there are no specific findings on Harrison's fraudulent intent, that is, whether she knew the representations were false or made them recklessly for the purpose of inducing action, as to each of the representations in which she participated. Therefore, before Harrison can be held liable for fraud, the trial court must determine whether these specific findings can be made from the evidence presented at trial.

■■■ ¶ 34 No fraud liability can rest on the specific finding that Harrison participat-

ed in the recreation of the JCDR because one critical element is missing—reliance. "While the question of reasonable reliance is usually a matter within the province of the jury, there are instances where courts may conclude that, as a matter of law, there was no reasonable reliance." *Gold Standard, Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1067 (Utah 1996) (citation omitted). If a party learns that the representation is not accurate, continued reliance on that representation is unreasonable. *Id.* at 1068. Here there is ample evidence that AFIE knew the JCDR was not accurate and did not rely on it.

¶ 35 First, AFIE could not have relied on the recreated JCDR to its detriment because it was not even made available to AFIE until after litigation commenced. AFIE made its last payment based on RSI's estimates prior to the commencement of this lawsuit and its receipt of the recreated JCDR. AFIE filed its complaint in February 1995. RSI recreated the JCDR in June 1995 and provided it to AFIE as part of discovery shortly afterwards. By September 1995, AFIE knew that the JCDR was a recreation. During this time, AFIE incurred no injury based on the recreated JCDR because AFIE had already made all of the payments to RSI that constituted its claimed injury in this case. Hence, it did not rely on the recreated JCDR to its detriment.

¶ 36 In addition, when it received the recreated JCDR, AFIE knew that RSI claimed that the original JCDR and critical documents necessary to replicate it were taken in a burglary. To uncover how RSI recreated the JCDR, AFIE questioned RSI employees and requested that Harrison provide an affidavit explaining how the JCDR was recreated. As the findings of fact and the trial evidence demonstrate, Harrison submitted an affidavit prior to trial explaining the method by which the JCDR was recreated. At trial, she admitted that the JCDR contained inaccuracies and guesses. AFIE brought in a forensic accountant who testified at trial about the inaccuracy of the JCDR. AFIE doubted the accuracy of the recreated JCDR from the beginning and knew from Harrison herself that it contained inaccuracies. Because AFIE knew that the recreated JCDR contained inaccuracies and in no way relied on it, the JCDR does not constitute a misrepresentation for purposes of establishing fraud against Harrison.

¶ 37 Because the trial court did not make appropriate and specific findings as to (1) which representations Harrison personally participated in or directed, (2) whether AFIE actually relied on these specific representations, and (3) whether Harrison knew they were false or recklessly made these representations, the findings of fact lack sufficient detail to allow us to review the trial court's decision. The absence of these findings by the trial court "is a fundamental defect that makes it impossible to review the issues that were briefed without invading the trial court's fact-finding domain." *Acton*, 737 P.2d at 999. This fundamental defect prevents us from proceeding forward and requires us to remand this case to the trial court to complete the findings of fact and to conduct further proceedings if necessary.

## III.   HARRISON'S REMAINING CLAIMS

¶ 38 Because we remand this case for the trial court to complete its findings on the essential elements of fraud and to determine whether those findings support a conclusion that Harrison is liable for fraud, we need not reach the other issues Harrison raises on appeal. However, in the interest of judicial economy, "a brief discussion of these issues is appropriate as guidance for the trial court on remand." *Kilpatrick v. Wiley, Rein & Fielding*, 2001 UT 107, ¶ 55, 37 P.3d 1130 (citing *Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 949 (Utah 1996)).

¶ 39 First, Harrison claims that the trial court erred in its measure of fraud-based damages and in assessing against her the same amount of damages as was awarded against RSI. We note that AFIE waives recovery from Harrison for all but $57,607.85 of the trial court's award. *See* Appellee's Brief at 61 n. 15. Whether Harrison is liable for any of this amount can only be determined after the trial court completes its findings of fact on remand. Accordingly, we decline to

address the issue. However, there was some dispute regarding the method used by the trial court to determine fraud-based damages. Therefore, if the trial court still concludes that Harrison is liable for fraud, we direct the trial court to explicitly state the method used to determine fraud-based damages when it revisits this issue.

¶ 40 Second, Harrison also claims that the trial court erred in awarding AFIE attorney fees and in failing to apportion attorney fees between causes of action. These two points of error are moot, however, because AFIE has waived its claim to recovery of its attorney fees in this case and is no longer seeking those amounts. *See id.* at 65.

¶ 41 Finally, Harrison argues that the trial court improperly assessed against her $35,959.00 for costs incurred by AFIE for accounting and construction experts and that even if it was appropriate to award these costs, the trial court failed to comply with the procedural requirements of rule 54(d) of the Utah Rules of Civil Procedure before assessing these costs. AFIE argues that the trial court properly awarded the expert fees as an element of fraud damages since Harrison, by committing fraud, made it necessary for AFIE to go to the extra expense of hiring the experts. "[A] trial court's decision to award the prevailing party its costs will be reviewed under an abuse of discretion standard." *Young v. State,* 2000 UT 91, ¶ 4, 16 P.3d 549 (footnote and citations omitted). If the trial court completes its findings and concludes Harrison is liable for fraud, the trial court will also need to decide whether to award expert witness fees as an element of fraud-based damages. "[T]o provide guidance to the trial court on remand[,] . . . we simply set forth the applicable law." *See Buzas Baseball,* 925 P.2d at 949.

¶ 42 A prevailing party's costs may be recovered under rule 54(d)(1) of the Utah Rules of Civil Procedure.[6] The Utah Code also expressly provides for witness fees to "be taxed as costs against the losing party" in civil cases. Utah Code Ann. § 78–46–30

(2002). We have held, however, that only the statutory witness fee may be taxed as costs against the losing party. *Young,* 2000 UT 91 at ¶ 15, 16 P.3d 549 (citing *Frampton v. Wilson,* 605 P.2d 771, 774 (Utah 1980)). The statutory witness fee is limited to a stated daily rate plus reimbursement for mileage traveled "in going only." Utah Code Ann. § 78–46–28 (2002). We have also held that "[t]here is a distinction to be understood between the legitimate and taxable 'costs' and other 'expenses,' of litigation which may be ever so necessary, but are not properly taxable as costs." *Frampton,* 605 P.2d at 774. In *Young,* we held that "[a]ny amount paid [for a witness] over the statutory allowance is an expense of litigation, rather than a taxable cost, and not recoverable." 2000 UT 91 at ¶ 18, 16 P.3d 549.

¶ 43 Nevertheless, AFIE argues that the award of expert witness fees should stand because the trial court awarded them as an element of fraud-based damages. It relies on *Dugan v. Jones,* 615 P.2d 1239 (Utah 1980), in which we held that " 'the defrauded party may recover any additional damages which are a natural and proximate consequence of the defendant's misrepresentations.' " *Id.* at 1250 (citations omitted). AFIE argues that it would not have had to consult the forensic accountant and the construction expert but for Harrison's destruction of evidence. While the trial court may exercise reasonable discretion regarding the allowance of certain costs, *see Morgan v. Morgan,* 795 P.2d 684, 686 (Utah Ct.App. 1990) (citation omitted), "expert witnesses cannot be awarded extra compensation unless the statute expressly so provides," *Frampton,* 605 P.2d at 774. No Utah statute provides for extra compensation to expert witnesses in fraud cases. In *Young,* we made it clear that "even if *necessary,* fees paid over the amount allowed by statute are not properly taxable as costs, and are therefore not recoverable." 2000 UT 91 at ¶ 16, 16 P.3d 549 (emphasis added). If, on remand, the trial court needs to decide the appropriate amount to award for expert witness fees, the amount awarded should be limited to that allowed by statute.

---

6. Rule 54(d)(1) states as follows: "Except when express provision therefor is made either in a statute of this state or in these rules, costs shall be allowed as of course to the prevailing party." Utah R. Civ. P. 54(d)(1).

## CONCLUSION

¶ 44 Although AFIE failed to plead fraud with the requisite particularity in its complaint, that error is harmless because it is not reasonably likely that the error changed the outcome of the case. Rule 15(a) allows for complaints to be freely amended prior to trial, and rule 15(b) allows for the amendment of pleadings to conform to evidence presented at trial. However, focusing solely and specifically on the trial court's findings of fact concerning Harrison's personal participation in fraud, we conclude that those findings are insufficient to allow us to properly review the adequacy of the evidence or the correctness of the trial court's conclusion that Harrison is liable for fraud. We determine as a matter of law, however, that no fraud liability can rest on the recreated JCDR. Therefore, we remand this case back to the trial court for entry of further findings of fact regarding the essential elements of fraud to support Harrison's personal liability in accordance with this opinion, or for further proceedings consistent with this opinion.

¶ 45 Chief Justice DURHAM, Justice RUSSON, Justice WILKINS, and Judge BILLINGS concur in Associate Chief Justice DURRANT's opinion.

¶ 46 Justice HOWE did not participate herein; Court of Appeals Judge JUDITH M. BILLINGS sat.