**2013 UT App 261**

## THE UTAH COURT OF APPEALS

ARUNA G. SHAH AND GHANSHYAM B. SHAH,
Plaintiffs and Appellants,
*v.*
INTERMOUNTAIN HEALTHCARE, INC.; KELLY MYERS; THOMAS D.
BAUMAN; GEORGE E. THOMSEN; JAMES ZEBRACK; AND
DAVID S. FEUER,
Defendants and Appellees.

Opinion
No. 20120402-CA
Filed October 31, 2013

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 060903979

Kevin Sheff and Katherine L. Brim,
Attorneys for Appellants
Patrick L. Tanner, Attorney for Appellee
Intermountain Healthcare, Inc.
John D. Ference, Attorney for Appellee
Kelly Myers
Larry R. White and Paul D. Van Komen, Attorneys
for Appellee Thomas D. Bauman
George T. Naegle and Zachary E. Peterson,
Attorneys for Appellee George E. Thomsen
Catherine M. Larson and Peter J. Baxter, Attorneys
for Appellee James Zebrack
Shawn McGarry and Nan T. Bassett, Attorneys for
Appellee David S. Feuer

JUDGE JAMES Z. DAVIS authored this Opinion, in which JUDGES
CAROLYN B. MCHUGH and J. FREDERIC VOROS JR. concurred.

DAVIS, Judge:

¶1     Aruna G. Shah and Ghanshyam B. Shah appeal the trial court's denial of their motion for leave to amend their complaint against Intermountain Healthcare, Inc. (LDS Hospital), Dr. Kelly Myers, Dr. Thomas D. Bauman, Dr. George E. Thomsen, Dr. James Zebrack, and Dr. David S. Feuer (collectively, the Defendants). We affirm.


BACKGROUND

¶2     The Shahs were involved in an automobile accident on August 2, 2003, and Aruna was airlifted to LDS Hospital in Salt Lake City for medical treatment. On the advice of Dr. Bauman, Aruna underwent spinal stabilization surgery on August 8, 2003. As a result of the accident, Aruna was suffering from a number of health conditions at the time of surgery and experienced several complications during the surgery, including heart failure. Following the surgery, Aruna suffered from extensive muscle and nerve dysfunction. On March 8, 2006, the Shahs filed a complaint against LDS Hospital and Dr. Feuer, the vascular surgeon who evaluated Aruna the day after her surgery, alleging medical negligence and negligent infliction of emotional distress arising from the treatment Aruna received at LDS Hospital following the accident. The Shahs filed their First Amended Complaint on June 22, 2006, adding Dr. Myers, Dr. Bauman, Dr. Thomsen, and Dr. Zebrack as defendants, and asserting claims of medical negligence and negligent infliction of emotional distress against them as well.

¶3     On August 22, 2007, the Shahs moved for leave to file another amended complaint and submitted a proposed Second Amended Complaint to the court.[1] This proposed complaint added

---

1. In fact, the proposed Second Amended Complaint was at least the third in a series of attempts by the Shahs to amend their complaint a second time and, according to the Defendants, was

(continued...)

claims for racketeering against LDS Hospital and claims for breach of fiduciary duty/fraudulent concealment,[2] fraud, negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the Utah Consumer Sales Practices Act (UCSPA), intentional infliction of emotional distress, res ipsa loquitur, civil conspiracy, quantum meruit/unjust enrichment, and spoliation of evidence against all of the Defendants. The Defendants opposed the Shahs' motion to amend on the ground that the newly alleged causes of action were futile. The trial court heard oral argument on the Shahs' motion on November 30, 2007.

¶4     On December 11, 2007, the trial court denied the Shahs' motion for leave to amend. In its written decision, the trial court specifically rejected as futile the racketeering, quantum meruit, breach of contract, breach of the covenant of good faith and fair dealing, spoliation of evidence, "fraud-based," and UCSPA claims. After completing its analysis of these claims, the court concluded that "at least ten (10) of [the Shahs'] proposed claims would not withstand a motion to dismiss" and that the court was "not inclined to cherry pick the remaining claims that are potentially adequately pled," asserting that "presenting a proposed amended complaint . . . is an all-or-nothing proposition."

¶5     In July and August 2011, the Defendants moved for summary judgment on the negligence claims, asserting that the

---

1. (...continued)
"nearly identical" to previous proposed amended complaints. The trial court permitted oral argument on the Shahs' August 22, 2007 motion for leave to amend because the Shahs claimed that the court had failed to fully consider their prior motions. The proposed Second Amended Complaint filed by the Shahs on August 22, 2007, is the only one before us on appeal.

2. For simplicity, we refer to these claims simply as fraudulent concealment.

Shahs had failed to timely designate expert witnesses and that they could not successfully prove their medical negligence claims without expert testimony.[3] The trial court granted summary judgment in favor of the Defendants on April 10, 2012. On appeal, the Shahs do not challenge the trial court's summary judgment ruling but assert only that the trial court erred in refusing to grant them leave to amend their complaint with respect to the following claims: "fraudulent concealment, fraud, negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of the UCSPA."

## ISSUE AND STANDARDS OF REVIEW

¶6    The Shahs assert that the trial court erred in denying them leave to amend their complaint because it failed to individually analyze the legal sufficiency of each of the Shahs' claims and because the claims were sufficient to withstand a motion to dismiss. "The granting or denial of leave to amend a pleading is within the broad discretion of the trial court, and we will not disturb such a ruling absent a showing of an abuse of that discretion." *Smith v. Grand Canyon Expeditions Co.*, 2003 UT 82, ¶ 31, 84 P.3d 1154. However, in this case, the trial court denied leave to amend on grounds of futility because it determined that the "proposed amendment would not withstand a motion to dismiss." *See Jensen v. IHC Hosps., Inc.* (*Jensen II*), 2003 UT 51, ¶ 139, 82 P.3d 1076 (citation and internal quotation marks omitted). Whether a claim can withstand a motion to dismiss is a question of law, and we therefore review the trial court's underlying determination regarding the legal sufficiency of the claim for correctness. *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1236 (11th Cir. 2008) (holding that the trial court's denial of a motion for leave to amend based on futility is a legal conclusion reviewed de novo); *Salt Lake*

---

3. The Shahs previously abandoned their negligent infliction of emotional distress claims.

*City Corp. v. Big Ditch Irrigation Corp.*, 2011 UT 33, ¶ 19, 258 P.3d 539 ("Whether a court properly granted a 12(b)(6) motion to dismiss is a question of law, which we review for correctness.").

ANALYSIS

I. Sufficiency of the Trial Court's Analysis

¶7     The Shahs first assert that the trial court erred in determining that leave to amend was "an all-or-nothing proposition" and rejecting their proposed Second Amended Complaint in its entirety despite having analyzed the legal sufficiency of only some of their claims. While it appears that we have previously approved a trial court's decision to deny a motion for leave to amend in its entirety where one of three claims was "potentially viable," *Francisconi v. Hall*, 2008 UT App 166U, para. 15 (mem.), the trial court in that case had based its denial primarily on its determination that the motion for leave to amend was untimely, *id.* paras. 10–11. The likely futility of the claims was merely an additional factor supporting the court's decision. *Id.* para. 12. Rule 15 of the Utah Rules of Civil Procedure directs that "leave [to amend] shall be freely given when justice so requires." Utah R. Civ. P. 15(a). Given that "[t]he purpose of [rule 15] is to provide litigants the maximum opportunity for *each* claim to be decided on its merits rather than on procedural niceties," *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (emphasis added) (citation and internal quotation marks omitted) (interpreting the analogous rule 15 of the Federal Rules of Civil Procedure), we are not convinced that the trial court's all-or-nothing approach was appropriate. Rather, in the absence of some other justification for denying leave to amend, the trial court should have analyzed the futility of each individual claim and then, if there were no other grounds for precluding an amendment, granted leave to amend as to those claims that were legally viable, if any. *Cf. Bartronics, Inc. v. Power-One, Inc.*, 245 F.R.D. 532, 535–37, 539 (S.D. Ala. 2007) (denying the defendants' motion to amend

their answer and counterclaim in part on grounds of futility, but rejecting the plaintiff's argument that other claims were futile and permitting amendment with respect to those claims); *Plumley v. Southern Container, Inc.*, 125 F. Supp. 2d 556, 560 n.2 (D. Me. 2000) (suggesting that the best method for handling a situation where only some claims asserted in a motion for leave to amend are legally viable is "to allow amendment only of those claims for which the proposed amendment would not be futile" and "for counsel for a plaintiff [to] simply . . . file an appropriate amended complaint after final disposition of the motion for leave to amend").

¶8      However, on appeal, the Shahs challenge the trial court's decision only with respect to their claims for "fraudulent concealment, fraud, negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of the UCSPA."[4] The trial court explicitly

---

4. The Shahs have only generally alluded to the remaining claims that the trial court identified as "potentially adequately pled" and have engaged in no analysis explaining why those specific claims were well pled or asserting that they should be permitted to amend their complaint as to those claims. The relevance of the Shahs' argument regarding the trial court's failure to specifically analyze each claim appears to lie in their assertion that their fraudulent concealment, fraud, and negligent misrepresentation claims were among those that the trial court failed to specifically analyze in its denial of their motion for leave to amend. They assert that "it is impossible to know whether [the trial court] actually analyzed these claims, or whether they were among those the court felt justified in not evaluating." However, the trial court explicitly rejected all of the Shahs' "fraud-based" claims on the ground that those claims lacked specificity. We therefore disagree with the Shahs' assertion that it is impossible to tell whether the court analyzed their fraud-based fraudulent concealment, fraud, and

(continued...)

addressed the futility of each of these claims. Specifically, the trial court explained that the "breach of contract and breach of implied covenant of good faith and fair dealing claims fail to identify an underlying contract (be it implied or express)"; that the Shahs' "fraud-based claims . . . are lacking in specificity, including connecting specific Defendants to specific fraudulent misconduct or misrepresentations"; and that the UCSPA claim "is displaced by the more specific malpractice act." Thus, the trial court's error in declining to address the futility of the remaining claims does not affect the outcome of this appeal. We therefore turn to the question of whether the trial court correctly determined that the six claims that are the subject of this appeal were legally insufficient and therefore futile.

## II. Legal Sufficiency of the Shahs' Claims

¶9      "It is well settled that a court may deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss . . . ." *Jensen II*, 2003 UT 51, ¶ 139 (omission in original) (citation and internal quotation marks omitted). Rule 12(b)(6) of the Utah Rules of Civil Procedure permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Utah R. Civ. P. 12(b)(6). "[A] complaint does not fail to state a claim unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." *Mack v. Utah State Dep't of Commerce*, 2009 UT 47, ¶ 17, 221 P.3d 194 (citation and internal quotation marks omitted).

---

4. (...continued)
negligent misrepresentation claims—it is clear to us that the trial court did so. They also vaguely suggest that the trial court's lack of analysis alone justifies reversal of its entire decision denying leave to amend, regardless of whether the particular claims they appeal were adequately analyzed. But again, the Shahs have failed to provide any support for this argument.

Having examined each of the Shahs' proposed claims, we agree that they are futile.

A.    Fraudulent Concealment, Fraud, and Negligent Misrepresentation

¶10    The trial court determined that the Shahs' "fraud-based claims" lacked specificity and failed to "connect[] specific Defendants to specific fraudulent misconduct or misrepresentations." Rule 9(b) of the Utah Rules of Civil Procedure mandates that "circumstances constituting fraud . . . shall be stated with particularity." Utah R. Civ. P. 9(b). "[T]he mere recitation by a plaintiff of the elements of fraud in a complaint does not satisfy the particularity requirement." *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35. "The relevant surrounding facts must be set forth with sufficient particularity to show what facts are claimed to constitute such charges." *Id.* (citations and internal quotation marks omitted). Additionally, in order to plead fraud with particularity, the plaintiff must "identify the offender" rather than simply describe misrepresentations in the passive voice. *Coroles v. Sabey*, 2003 UT App 339, ¶ 28, 79 P.3d 974; *see also Webster v. JP Morgan Chase Bank, NA*, 2012 UT App 321, ¶ 19, 290 P.3d 930 ("Rule 9 requires that a plaintiff not only allege facts to establish the elements of a fraud claim but also recite [t]he relevant surrounding facts, such as the identity of the person who made the alleged misrepresentation[] and the time and location at which it was uttered." (citation and internal quotation marks omitted)); *cf. Dileo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (explaining that the particularity requirement of the analogous rule 9 of the Federal Rules of Civil Procedure requires that the complaint include "the who, what, when, where, and how"). With respect to the Shahs' fraud-based claims (fraudulent concealment, fraud, and negligent misrepresentation) against most of the Defendants, we agree with the trial court that the claims do not comply with the particularity requirement.

¶11    "Fraudulent concealment requires that one with a legal duty or obligation to communicate certain facts remain silent or

otherwise act to conceal material facts known to him." *Jensen v. IHC Hosps., Inc.* (*Jensen I*), 944 P.2d 327, 333 (Utah 1997); *see also Nixdorf v. Hicken*, 612 P.2d 348, 354 (Utah 1980) ("The relationship between a doctor and his patient creates a duty in the physician to disclose to his patient any material information concerning the patient's physical condition."). Fraud requires proof

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

*Armed Forces Ins. Exch.*, 2003 UT 14, ¶ 16 (citation and internal quotation marks omitted). The elements of negligent misrepresentation are similar to those of fraud except that negligent misrepresentation "does not require the intentional mental state necessary to establish fraud." *Price–Orem Inv. Co. v. Rollins, Brown & Gunnel, Inc.*, 713 P.2d 55, 59 n.2 (Utah 1986); *see also Smith v. Frandsen*, 2004 UT 55, ¶ 9, 94 P.3d 919 (explaining that negligent misrepresentation may be established where the false representation is made "carelessly or negligently" with the expectation that it will be relied on (citation and internal quotation marks omitted)).

¶12 The Shahs assert generally that all of the Defendants failed to provide them with complete and accurate information regarding Aruna's health and treatment after she received that treatment and therefore breached their fiduciary duty to her and conducted acts of fraud or negligent misrepresentation. However, as to all causes of action other than fraud and negligent misrepresentation against Dr. Bauman, *see infra* ¶ 13, the Shahs fail to explain which

defendants had what knowledge, which defendants made what statements, or how the Defendants specifically breached their individual fiduciary duties. The Shahs assert that additional discovery is necessary in order to identify which individuals did what. But "a plaintiff alleging fraud must know what his claim is when he files it." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 990 (10th Cir. 1992) (interpreting rule 9(b) of the Federal Rules of Civil Procedure), *overruled on other grounds by Central Bank v. First Interstate Bank*, 511 U.S. 164 (1994), *as recognized by Seolas v. Bilzerian*, 951 F. Supp. 978, 982 (D. Utah 1997). "[A] complaint alleging fraud should be filed only after a wrong is reasonably believed to have occurred; it should serve to seek redress for a wrong, not to find one." *Segal v. Gordon*, 467 F.2d 602, 607–08 (2d Cir. 1972); *cf. Downtown Athletic Club v. Horman*, 740 P.2d 275, 278 (Utah Ct. App. 1987) (explaining that in determining whether to grant an extension to permit discovery prior to hearing a motion for summary judgment, the trial court should consider whether the facts sought through discovery are merely speculative). Thus, the Shahs' general assertion of wrongdoing against the Defendants does not meet the particularity requirement as to the three fraud-based claims.

¶13    The Shahs do plead with particularity their claims of fraud and negligent misrepresentation against Dr. Bauman. They cite a number of allegedly knowing false statements made to them by Dr. Bauman, which they maintain "induce[d them] to undergo the expensive, elective spinal stabilization surgery at LDS Hospital instead of deciding to transport [Aruna] to [a hospital near her home in] Colorado or opting for a less expensive, non-surgical course of treatment such as bed rest." Dr. Bauman argues that any alleged falsity of his statements, particularly regarding Aruna's risk of paralysis, her stability prior to surgery, and the allergic reaction she suffered during surgery were beyond the ken of a lay person and needed to be established by expert testimony. We agree.[5] *See*

---

5. The Shahs assert that the existence of "medical facts underlying

(continued...)

*Nixdorf*, 612 P.2d at 352 ("[T]he nature of the [medical] profession removes the particularities of its practice from the knowledge and understanding of the average citizen."). Dr. Bauman asserts that the Shahs' fraud and negligent misrepresentation claims required expert testimony on the same facts that were the subject of the negligence claims and that because the trial court prohibited expert testimony on those facts due to the Shahs' failure to timely disclose experts, we should affirm the trial court's determination that the claims would have been futile.

¶14 The Shahs respond that summary judgment was granted only as to the negligence claims and that it therefore did nothing to preclude the proposed claims in the motion for leave to amend. While the summary judgment resolved different claims than those the Shahs now seek to bring, many of those claims are based on the same underlying facts as the negligence claims. The trial court's ruling that the Shahs' lack of expert testimony precluded them from establishing facts necessary to their prima facie case of negligence implicitly adjudicated the Shahs' ability to establish those same facts with respect to any other claims as well. *Cf. Timm v. Dewsnup*, 851 P.2d 1178, 1182 (Utah 1993) (holding that the trial court did not err in determining that the defendants' motion to amend their counterclaim was futile as to their reformation claim because the trial court's ruling that the defendants owed certain amounts on a contract "implicitly and necessarily constituted an adverse ruling" against the defendants on the issue of whether the

---

5. (...continued)
the amended claims . . . is objectively verifiable from the record," but fail to explain where in the record those facts are objectively established. Their argument focuses primarily on their assertion that the trial court precluded expert testimony only as to their negligence claims. *See infra* ¶ 14. Thus, we do not further consider the Shahs' assertion that expert testimony was unnecessary to establish their fraud claims. *See generally State v. Garner*, 2002 UT App 234, ¶ 8, 52 P.3d 467 ("It is well established that Utah appellate courts will not consider claims that are inadequately briefed.").

contract reflected their intentions, on which their reformation claim depended). Thus, to the extent that the same factual issues that were relevant to the negligence claims are relevant to the Shahs' other claims, the propriety of the trial court's denial of their motion for leave to amend is moot; permitting the Shahs to amend their complaint would be futile because they could not present expert testimony pertaining to any factual issues that were necessary to the negligence claims. *See Jensen II*, 2003 UT 51, ¶¶ 146–47, 82 P.3d 1076 (holding that a jury's finding that a defendant doctor was not negligent rendered moot a claim for fraudulent concealment based on that negligence and that the plaintiff's motion to amend to add a claim imputing liability to the hospital for the doctor's fraud was therefore futile).

¶15    The negligence alleged against Dr. Bauman included "[m]isleading [the Shahs] into believing that [Aruna] had experienced an allergic reaction during the spinal surgery" and "[f]ailing to disclose material information to [the Shahs]." These are the same allegations on which the fraud and negligent misrepresentation claims were based and would require the same expert testimony to establish. Thus, the Shahs' failure to timely designate experts on these factual issues precludes them from further pursuing their fraud and negligent misrepresentation claims against Dr. Bauman.

B.    Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing

¶16    "The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Bair v. Axiom Design, LLC*, 2001 UT 20, ¶ 14, 20 P.3d 388. "An implied covenant of good faith and fair dealing inheres in every contract," and a party breaches the covenant by intentionally injuring "the other party's right to receive the benefits of the contract." *Eggett v. Wasatch Energy Corp.*, 2004 UT 28, ¶ 14, 94 P.3d 193.

¶17 The trial court initially denied the Shahs' motion to amend with respect to their contract-based claims because it determined that the Shahs had "fail[ed] to identify an underlying contract (be it implied or express)." We agree with the Shahs that the physician–patient relationship is contractual insofar as it constitutes an agreement to provide professional services in return for financial compensation and that the Shahs' complaint specifically identified contractual relationships between Aruna and LDS Hospital and between Aruna and Dr. Bauman.[6] *See* Utah Code Ann. § 78B-3-403(23) (LexisNexis Supp. 2013) (defining a patient as "a person who is under the care of a health care provider, under a contract, express or implied"); *Sorensen v. Barbuto*, 2006 UT App 340, ¶ 7, 143 P.3d 295 (rejecting a defendant's claim that a contractual relationship between a patient and a physician must necessarily be demonstrated by a written contract), *aff'd*, 2008 UT 8, 177 P.3d 614.

¶18 To the extent that the Shahs' claims allege that the Defendants breached their contractual obligations to Aruna "by failing to provide professional health care services in accordance with generally accepted standards of professionalism and good faith," we agree with the Defendants that the proposed amendment is simply an effort to clothe the negligence claims in contractual language. *See* Utah Code Ann. § 78B-3-403(17) ("'Malpractice action against a health care provider' means any action against a health care provider, whether in contract, tort, breach of warranty, wrongful death, or otherwise, based upon alleged personal injuries relating to or arising out of health care rendered or which should have been rendered by the health care provider."); *cf. McLaughlin*

---

6. Given that the Shahs refer generally to contractual relationships between Aruna and the other defendants and fail to specifically identify how and when those contractual relationships arose, we question whether their pleading was sufficient to allege contract claims against those defendants. However, we need not resolve this issue in light of our determination that the contract claims were nevertheless futile. *See infra* ¶¶ 18–19.

*v. Schenck*, 2009 UT 64, ¶¶ 39–41, 220 P.3d 146 (determining that a plaintiff's attempt to amend his complaint by adding parties and recasting his contract-based fiduciary duty claim as a tort-based claim was futile because both claims were based on the same underlying facts). Because the same facts necessary to prove medical negligence are necessary to prove breach of contract based on the failure to provide adequate professional health services, the Shahs' failure to timely file their expert disclosures makes the trial court's denial of their motion to amend on this issue moot, and amendment now would be futile.

¶19    To the extent that the Shahs' claims are based on the Defendants' alleged contractual obligations to provide the Shahs with Aruna's complete medical chart and to inform them of "material information concerning [her] physical condition," the Shahs have failed to allege that any contracts between the Shahs and the Defendants gave rise to a duty to provide medical information or complete medical records. The duty to provide such information is a common law fiduciary duty arising out of the physician–patient relationship and does not necessarily inhere as a result of a contract to provide medical services. *See Nixdorf v. Hicken*, 612 P.2d 348, 354 (Utah 1980) (explaining, in the context of a negligence claim, that the physician–patient relationship "creates a duty in the physician to disclose to his patient any material information concerning the patient's physical condition"); *cf. Sorensen*, 2006 UT App 340, ¶ 10 (explaining that a physician's breach of the duty of confidentiality is actionable in tort, not contract). Thus, even to the extent that the contract claims may not require the excluded expert testimony, the Shahs have failed to state a cause of action for which relief can be granted, rendering their contract claims futile.

C.    Violations of the UCSPA

¶20    Finally, we agree with the trial court that the Shahs' UCSPA claim is merely another attempt to litigate the negligence claims under another name. The UCSPA establishes a cause of action for

consumers against suppliers for deceptive and unconscionable acts and practices in connection with consumer transactions. *See* Utah Code Ann. §§ 13-11-4 to -5 (LexisNexis 2009 & Supp. 2013). The Shahs' proposed Second Amended Complaint asserts that the "Defendants knowingly and intentionally engaged in deceptive acts and fraudulent practices . . . by indicating to [the Shahs] that the subject of the consumer transactions was of a particular standard, quality and quantity, when it was not" and "by failing to disclose material information concerning [Aruna's] physical condition." In other words, the Shahs claim that the Defendants did not provide them with appropriate and professional medical care. This claim falls squarely within the purview of the medical malpractice statute. *See id.* § 78B-3-403(17) (Supp. 2013). The Shahs assert that they are entitled to bring a UCSPA claim even if it overlaps with their negligence claims. *See id.* § 13-11-19(1), (3) (indicating that "[w]hether he seeks or is entitled to damages or otherwise has an adequate remedy at law," a consumer may bring an individual or class action "for declaratory judgment, an injunction, and appropriate ancillary relief"). However, even accepting this assertion as true, the Shahs' lack of expert testimony once again precludes them from establishing that the Defendants provided Aruna with inadequate medical care.

CONCLUSION

¶21    Although we agree with the Shahs that the trial court should have addressed the potential merit of each claim raised in their proposed Second Amended Complaint, its failure to do so does not affect the outcome of this appeal because the trial court did address each of the claims raised by the Shahs on appeal. Because each of those claims is futile, we affirm the trial court's denial of the Shahs' motion for leave to amend their pleadings.

———