**ZIONS FIRST NATIONAL BANK, N.A., Plaintiff and Appellee,**

v.

**ROCKY MOUNTAIN IRRIGATION, INC., a Utah corporation; Valley View Enterprises, a Utah corporation; and Grant and Ruby Cooper, individually and dba Rocky Mountain Irrigation, Inc., Defendants and Appellants.**

No. 950098.

Supreme Court of Utah.

Jan. 17, 1997.

---

John A. Beckstead, James R. Holbrook, Salt Lake City, for plaintiff.

Grant and Ruby Cooper, pro se.

DURHAM, Justice:

This is the second appeal by defendants Grant S. Cooper and Ruby S. Cooper dba Rocky Mountain Irrigation and Grant and Ruby Cooper individually (collectively the "Coopers"). We reversed in part and remanded the case in *Zions First National Bank v. Rocky Mountain Irrigation, Inc.,* 795 P.2d 658 (Utah 1990) (*Rocky Mountain I*). Acting pro se in this appeal, the Coopers allege error in the trial court proceedings and the judgment on remand. We affirm.

This case was originally a consolidation of four separate lawsuits involving claims by both Zions First National Bank and the Coopers regarding enforcement of eight promissory notes given by the Coopers to Zions in exchange for various business loans.[1] Upon default, Zions brought suit against the Coopers to enforce the notes, and take possession of collateral, and foreclose the mortgages given as security under the notes. The Coopers alleged that Zions fraudulently altered two of the notes which were used to create a revolving line of credit. The Coopers claimed that, without their knowledge or consent, a future advances clause containing a variable rate of interest was added after the notes were executed.[2] The Coopers later amended their counterclaim to include a claim under the Utah Racketeering Influences and Criminal Enterprises Act (RICE), Utah Code Ann. §§ 76–10–1601 to –1608 (Supp.1981),[3] based in part upon the alleged fraudulent alteration of the notes and the subsequent charging of excess interest.

The trial court, reserving to itself the issue of whether the notes were fraudulently altered,[4] determined that because the alleged alteration was not material, the Coopers had

1. The facts underlying the dispute in this case are detailed in *Rocky Mountain I,* 795 P.2d 658, 660–61 (Utah 1990).

2. The trial court initially found that the underlying obligation on the notes had been paid off long before Zions sued on the notes. Zions' suit, therefore, was to recover amounts owed that were part of the revolving line of credit and thus were actually "future advances" with respect to the original notes. Apparently, however, no future advances were made against one of the two notes. *Rocky Mountain I,* 795 P.2d at 662 n. 3.

3. This Act was repealed and reenacted as the Pattern of Unlawful Activity Act. Ch. 238, 1987 Utah Laws 1194.

4. As noted by this court in *Rocky Mountain I,* the trial court's decision to reserve the issue of fraudulent alteration to itself was apparently based on its reasoning that because it had equitable jurisdiction over Zions' foreclosure action, this "precluded the jury from considering any matters related to the underlying debt." 795 P.2d at 661.

failed sufficiently to allege a claim based on fraudulent alteration. The court therefore dismissed the Coopers' claim for fraudulent alteration and directed a verdict on the issue as it related to the RICE counterclaim. *See Rocky Mountain I,* 795 P.2d at 662. After a special verdict was returned by a jury in favor of Zions on all other issues, the court dismissed all of the Coopers' claims and entered judgment in favor of Zions.

On appeal, this court affirmed in part and reversed in part. We held that the trial court improperly removed from the jury the issue of whether the two notes were materially and fraudulently altered and thus also improperly directed a verdict against the Coopers as it related to the RICE claim. *Rocky Mountain I,* 795 P.2d at 662–63. We thus reversed the trial court's determination regarding the enforceability of the two notes and remanded that part of the case for a jury determination on the fraud claim and the RICE claim. *Id.* at 664–65.

On remand, the trial court dismissed the Coopers' RICE claim on the basis of their failure to allege a continuous scheme or pattern of racketeering activity required by the RICE statutes. Utah Code Ann. § 76–10–1603. The trial court then conducted a jury trial on the issue of whether the two notes creating the revolving line of credit were materially and fraudulently altered. The jury found that Zions did not fraudulently alter the notes and that the Coopers did not pay excess interest on them. The court therefore entered a judgment dismissing the Coopers' claims. The Coopers appealed.

Before reaching the merits of the Coopers' claims, we address Zions' contention that the Coopers failed to properly appeal claims arising from intermediate orders. Zions contends that because the Coopers' notice of appeal designates only the final judgment, they are precluded from raising issues relating to any other proceedings or orders leading up to the judgment. We disagree.

■ Rule 3(d) of the Utah Rules of Appellate Procedure provides that "[t]he notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment or order, or part thereof, appealed from;

shall designate the court from which the appeal is taken; and shall designate the court to which the appeal is taken." There is no requirement under this rule that an appellant must indicate that the appeal also concerns intermediate orders or events that have led to that final judgment. We specifically held in *Scudder v. Kennecott Copper Corp.,* 886 P.2d 48, 50 (Utah 1994), that the language of rule 3(d) did not require a party appealing from an entire final judgment "to specify each interlocutory order of which the appellant seeks review." *See also Professional Sponsoring Fund, Inc. v. Rao,* 5 Haw. App. 382, 694 P.2d 885, 886 n. 1 (1985) ("When an appellant files a notice of appeal from a final judgment, he may, in his opening brief, challenge all nonfinal prior orders and happenings which led up to that final judgment."). Because the Coopers complied with rule 3(d) and generally designated the final judgment in their notice of appeal, they are not precluded from alleging errors in any intermediate order involving the merits or necessarily affecting the judgment as long as such errors were properly preserved.

In reaching the Coopers' allegations of error, we conclude that all are without merit. We first address the Coopers' primary contentions that the final judgment on remand cannot be enforced because it is indefinite, is based on unconscionable contract provisions, and does not reflect the terms of the contract. These arguments stem from the notes' "future advances" clauses, which provide that any future advances on the note will be made at "variable rates of interest depending upon the prime rate at the time."

■ The Coopers initially assert that the judgment on remand cannot be enforced because it "fail[s] to specify with definiteness and certainty the amount" rendered. *See* 46 Am.Jur.2d *Judgments* § 103 (1994) ("The general rule is that a final judgment for money must specify the amount awarded or the means for determining that amount."). In setting forth the amount of the Coopers' indebtedness to Zions, the judgment incorporated an exhibit which lists the principal owing on each note along with the interest rate as "Prime + 2.5%." The Coopers argue

that because the term "prime" is undefined, the judgment failed to specify the full amount of the Coopers' obligation. However, "[t]he fact that a judgment fails to recite a specific interest rate will not, in and of itself, render a judgment uncertain or indefinite, if the applicable rate can be conclusively established." *Id.; see also H.E. Butt Grocery Co. v. Bay, Inc.,* 808 S.W.2d 678, 680 (Tex.Ct.App.1991). We find that the trial court's use of the term "prime" in setting forth the interest rate on the Coopers' amount of indebtedness is sufficiently definable to determine the applicable interest rate. Variable interest rates keyed to the "prime" are commonplace in business loans to allow borrowers and lenders to accommodate fluctuations in the cost of money. *Constitution Bank & Trust Co. v. Robinson,* 179 Conn. 232, 425 A.2d 1268, 1270 (1979); *see also In re LeBlanc,* 622 F.2d 872, 878–79 (5th Cir.1980). The term "prime" is, " 'in general, the rate at which the best borrowers [of that bank] can borrow' " and is generally readily available by reference to the bank's records. *See Bank of Maine v. Weisberger,* 477 A.2d 741, 743–44 (Me.1984) (quoting *Associated East Mortgage Co. v. Highland Park, Inc.,* 172 Conn. 395, 374 A.2d 1070, 1073 (1977)). Therefore, the applicable interest rate can be determined by consulting Zions' bank records at the time each advance was made on the notes.[5]

■ Along these same lines, the Coopers also argue that the future advances clause itself, which uses the term "prime," is so indefinite as to be unconscionable, and even if not indefinite, the interest on the judgment which reflects "prime + 2.5%" is not supported by the contract.[6] However, on the basis of the analysis above, we do not agree that the use of the language "depending on the prime" is indefinite. Moreover, the jury found in the second trial that Zions did not charge, nor did the Coopers pay, more interest than was agreed to by both parties. The trial court's judgment is therefore proper.

■ The Coopers also contend that the trial judge erred in dismissing its RICE claim. We need not decide, however, whether the dismissal was granted in error, because any error was necessarily harmless in view of the jury's finding that the two notes were not fraudulently altered. Absent fraud, the notes could not have supported a RICE claim.

We have reviewed the Coopers' remaining claims and find them also to be without merit. Accordingly, we affirm the judgment of the trial court and remand for a determination of the interest owed on each principal amount of the advances.

ZIMMERMAN, C.J., STEWART, Associate C.J., and HOWE and RUSSON, JJ., concur in Justice DURHAM's opinion.

---

5. We recognize that the final amount of the interest owed on each principal amount still needs to be calculated to inform the Coopers of the total amount of their indebtedness. We thus direct Zions to prepare a table showing the actual interest rate and the accumulated interest for each advance, which will necessarily include a reference to its prime rate on the day of each advance. This table reflecting the total amounts owed by the Coopers is to be presented to the trial court for final review. The court should then reflect these amounts in an amended judgment.

6. Arguably, these issues were not properly preserved because they were raised for the first time after the jury had returned its verdict in the trial on remand and after the trial judge had entered its judgment based on the jury's verdict. The only time the Coopers made any reference to the possible ambiguity of the term "prime" was in their request in the original trial for a jury instruction that the language of the notes should be construed against the framer. *See Rocky Mountain I,* 795 P.2d at 664. The Coopers claimed that the language " 'depending upon the prime' should be construed to make the variability of the interest rate charged on advances depend on the variability of the prime rate." *Id.* We agreed that this instruction should have been given to the jury. *Id.* In the second jury trial, the general instruction that any ambiguity in the contract should be construed against the drafter was given, but made no reference to the meaning of the term "prime." The second trial focused mainly on whether the future advances clause was fraudulently inserted without the Coopers' consent.