174 P.3d 642 (2007)
2007 UT App 389
In the matter of the ESTATE OF Gary G. PAHL, deceased.
KaLynn Ninow, Petitioner and Appellee,
v.
William Lowe; Augusta Rose; Robert Mortensen; and Grand Staircase Land Co., Inc., Respondents and Appellants.
Augusta Rose, Third-party Petitioner,
v.
KaLynn Ninow, Ryan Pahl, Richard Ninow, and Does I-V, Third-party Respondents.
No. 20050867-CA.
Court of Appeals of Utah.
December 6, 2007.
Rehearing Denied December 26, 2007.
*643 Robert Henry Copier, Salt Lake City, for Appellants.
Hala L. Afu, Daniel F. Van Woerkom, and Sandra K. Weeks, Lehi, for Appellee.
Before BENCH, P.J., DAVIS and THORNE, JJ.

OPINION
DAVIS, Judge:
¶ 1 Respondents William Lowe and Augusta Rose appeal from several of the district court's determinations in favor of Petitioner KaLynn Ninow. We dismiss the appeal for lack of jurisdiction, but we award Petitioner her reasonable attorney fees and remand to the trial court for a determination of such fees.

BACKGROUND
¶ 2 Gary Pahl passed away on June 25, 2000, and shortly thereafter, Petitioner became the court-appointed representative for his estate. At the time of his death, Pahl owned all 6000 shares of stock in Pahl's Salt Palace Loan Office, Inc. (the Pawn Shop). On May 15, 2002, Petitioner executed a shareholder action by consent to remove Respondents as officers and directors of the Pawn Shop. The trial court then issued a temporary restraining order, which was later converted into a preliminary injunction, forbidding Respondents from acting on behalf of the Pawn Shop. During the course of these proceedings, Respondents submitted a document purporting to show that prior to his death, Pahl sold 3000 of his shares to the Pawn Shop, thus leaving him only 3000 shares at the time of his death. Petitioner then filed a petition asking the court to determine the ownership of the Pawn Shop.
¶ 3 On June 4, 2002a few days after the petition was filed and after the preliminary injunction was granted from the benchRespondents' attorney, Robert Copier, filed a document purporting to transfer the 3000 disputed shares to Grand Staircase Land Company, Inc. (Grand Staircase). One month later, Copier filed another document, this time purporting to transfer shares from Grand Staircase to Diamond Fork Land Company (Diamond Fork). Interestingly, Copier was the sole officer and only director of both Grand Staircase and Diamond Fork.
¶ 4 Shortly thereafter, Petitioner moved for summary judgment, which the trial court granted from the bench on August 26, 2002. A final order memorializing this decision was entered on May 1, 2003. The findings accompanying the summary judgment order explained that although a sale of 3000 shares to the Pawn Shop had apparently been contemplated, the terms of the sale were never met and, thus, Pahl retained all 6000 shares of stock at the time of his death. The court therefore concluded that "the subsequent `transfers' ha[d] all been void ab initio" and also found that the shareholder action that Petitioner had previously executed had removed Respondents as officers and directors of the Pawn Shop. Respondents appealed the summary judgment order to this court, and we affirmed. See Ninow v. Lowe (In re Estate of Pahl), 2004 UT App 291U, para. 8, 2004 WL 1945746 (mem.).
¶ 5 On September 3, 2002, shortly after the hearing regarding summary judgment but before the resulting summary judgment order was issued, Copier filed a separate shareholder derivative action brought by Diamond Fork on behalf of the Pawn Shop against Petitioner. More than two months later, Petitioner responded with a Motion to Dismiss and Motion to Consolidate. Unaware of Petitioner's responsive motions, the trial court entered a default judgment against Petitioner on November 26, 2002. The trial court later set aside this default judgment on June 12, 2003, reasoning that "the entry of default [had] result[ed] solely from court error." The following month, Diamond Fork moved to vacate the June 12, 2003 order setting aside the default judgment, but the motion was never submitted for decision. On March 12, 2004, Diamond Fork moved for dismissal, *644 arguing that it no longer had standing in the case because it had since transferred its 3000 shares to outside companies. On April 15, 2004, the shareholder action was consolidated into the probate proceeding, and the following month the trial court granted Diamond Fork's motion to dismiss.
¶ 6 Petitioner then filed a motion alleging that actions of both Respondents and Copier constituted contempt of the trial court's previous preliminary injunction and the court's summary judgment order determining the ownership of the Pawn Shop shares. On March 7, 2005, the trial court issued orders to show cause, and a hearing was held on the matter on April 6, 2005. The court then entered its resulting Memorandum Decision on May 26, 2005, ruling that the preliminary injunction was still in force and that the summary judgment adjudicating ownership of all 6000 Pawn Shop shares precluded further pursuits of any ownership interest in the Pawn Shop. In the Memorandum Decision, the court also set a hearing regarding the contempt issues.
¶ 7 During the time between the hearing on the order to show cause and the issuance of the trial court's resulting Memorandum Decision, Respondents filed a proposed order, which the trial court entered on April 26, 2005. The order stated that it was the final order for all claims included in the probate case and dismissed the case. This order, however, may have been inadvertently entered by the court as it is somewhat inconsistent with the court's later-entered Memorandum Decision discussed above, which contemplated future contempt hearings.
¶ 8 On about August 12, 2005, Respondents submitted another proposed "final" order. The trial court signed the proposed order on August 16, 2005, likely before the five-day time window for Petitioner's objection had passed. The order stated, among other things, that Respondents "are hereby ordered removed as officer and directors of [the Pawn Shop]." Respondents now appeal this order, as well as many prior orders of the trial court.

ISSUE AND STANDARD OF REVIEW
¶ 9 Respecting the issues Respondents raise on appeal, Petitioner argues that this court does not have jurisdiction to reach these issues because they were not timely appealed. See generally Utah R.App. P. 4(a) (instructing that the notice of appeal must be filed "within 30 days after the date of entry of the judgment or order appealed from"); Serrato v. Utah Transit Auth., 2000 UT App 299, ¶ 7, 13 P.3d 616 ("If an appeal is not timely filed, this court lacks jurisdiction to hear the appeal."). If we do not have jurisdiction, we cannot reach the underlying issues but "retain[] only the authority to dismiss the action." Varian-Eimac, Inc. v. Lamoreaux, 767 P.2d 569, 570 (Utah Ct.App. 1989). Thus, before we address any of the issues Respondents raise on appeal, we must determine if we have jurisdiction to reach those issues, which is a question of law, see Code v. Utah Dep't of Health, 2007 UT 43, ¶ 3, 162 P.3d 1097.

ANALYSIS

I. The August 16, 2005 Final Order
¶ 10 The only issue from the August 16, 2005 order that Respondents appeal is their removal as officers and directors of the Pawn Shop. This removal of Respondents, however, was addressed by the trial court years prior in its summary judgment of May 1, 2003. Paragraph 21 of the findings of fact accompanying this order states, in part: "The action by shareholder consent removes Lowe, Rose and Mortensen as officers and directors and names Ryan Pahl, KaLynn Ninow and Richard Ninow as directors of the corporation." The August 16, 2005 order that Respondents attempt to use to revisit this issue does not change the character of the trial court's previous determination, but is merely a reentry of that same determination. Under such circumstances, the newly-entered order does not restart the time for appeal. See State v. Garner, 2005 UT 6, ¶ 11, 106 P.3d 729 ("The rule governing amended judgments is clear: `[W]here a belated entry merely constitutes an amendment or modification not changing the substance or character of the judgment, such entry is merely a nunc pro tunc entry which relates *645 back to the time the original judgment was entered, and does not enlarge the time for appeal; but where the modification or amendment is in some material matter, the time begins to run from the time of the modification or amendment.'" (alteration in original) (quoting Adamson v. Brockbank, 112 Utah 52, 185 P.2d 264, 268 (1947))); Foster v. Montgomery, 2003 UT App 405, ¶ 18, 82 P.3d 191 ("Where a judgment is reentered, and the subsequent judgment does not alter the substantive rights affected by the first judgment, the time for appeal runs from the first judgment." (internal quotation marks omitted)). Thus, the removal of Respondents as officers and directors was adjudicated years prior to the August 16, 2005 order, and the time for appeal of such determination has long since passed.[1]See Utah R.App. P. 4(a).
¶ 11 Respondents argue that this factual finding from the earlier summary judgment order does not preclude appeal from the August 16, 2005 order because "the facts that support a summary judgment are not deemed undisputed for purposes of any other order." Respondents argue that this is especially so because this finding was "`gratuitous'" and was not an ultimate or subsidiary fact supporting the summary judgment. But Respondents provide no authority supporting these arguments, as is a common flaw in their briefs. They give vague references to rules 7 and 56 of the Utah Rules of Civil Procedure, but fail to discuss any specific subsections or language from those rules that would support their position. And we fail to see such support through our unguided reading of those rules. Further, respecting case law, Respondents only give a general citation to Parduhn v. Bennett, 2005 UT 22, 112 P.3d 495, to argue that "not all facts are created equal." While Parduhn discusses the difference between ultimate and subsidiary facts, see id. ¶¶ 24-25, we see no mention of "gratuitous" facts or any other language that might indicate that some facts are not operative beyond the scope of the summary judgment order in which they are found. We are therefore unpersuaded that the finding accompanying the May 1, 2003 summary judgment order was ineffectual; and thus, our position remains that the removal of Respondents as officers and directors was adjudicated long ago and may not now be appealed via the order Respondents drafted essentially reentering this prior determination, see Foster, 2003 UT App 405, ¶ 18, 82 P.3d 191.

II. Intermediate Orders
¶ 12 Respondents' Notice of Appeal, filed on September 15, 2005, professes to appeal not only the August 16, 2005 order, but also "all prior orders entered under or consolidated into this probate or any proceeding therein that have not previously been reviewed on the merits by an appellate court." Although this court may exercise jurisdiction over some orders other than the one directly appealed, our jurisdiction on appeal is not nearly so all-encompassing as Respondents seem to believe it to be.
¶ 13 When litigants appeal from a final judgment, "they are not precluded from alleging errors in any intermediate order involving the merits or necessarily affecting the judgment as long as such errors were properly preserved." Zions First Nat'l Bank, N.A. v. Rocky Mountain Irrigation, Inc., 931 P.2d 142, 144 (Utah 1997) (emphasis added); see also U.P.C., Inc. v. R.O.A. Gen., Inc., 1999 UT App 303, ¶ 27, 990 P.2d 945. To apply a more restrictive rule "would be unduly harsh, does not further the underlying purpose of a notice of appeal, and is in direct contradiction of our jurisprudence governing the right of appeal." U.P.C., Inc., 1999 UT App 303, ¶ 28, 990 P.2d 945. Thus, in addition to the August 16, 2005 order, we will exercise jurisdiction over "any intermediate order involving the merits or necessarily affecting" the August 16, 2005 order, so long as the alleged errors of such an intermediate order were preserved below. Zions First Nat'l Bank, 931 P.2d at 144. The orders Respondents attempt to reach, however, are not such type of intermediate orders.
*646 ¶ 14 The majority of Respondents' arguments allege error regarding the June 12, 2003 order that set aside the November 26, 2002 default judgment. The trial court denied Respondents' motion to vacate that order during the April 6, 2005 hearing. Respondents further allege error in the denial of another motion, which denial also occurred at the April 6, 2005 hearing. These denials that Respondents attempt to contest are not now appealable because they were followed by the entry of a final order on April 26, 2005, from which they should have appealed within thirty days. See Utah R.App. P. 4(a). That order, drafted by Respondents, specified that it "constitute[d] the final order as to all claims and all parties to any and all probate proceedings pending under this probate number." The order also dismissed the proceeding and "conclude[d] all litigation [then] pending or that had been pending" under that probate number. Respondents themselves characterize the April 26, 2005 order as "a final order dismissing everything before the court." Thus, any appeal from such an orderincluding an appeal regarding alleged errors with any prior intermediate ordersshould have been commenced within thirty days of April 26, 2005. See id. Respondents did not timely appeal this final order, nor do they try to reach it through the current appeal. Instead, they desire the final order dismissing the case to stand, yet attempt to challenge the court's denial of motions that occurred prior to the final order. Such a nonsensical practice is not allowed and would completely circumvent our rule limiting the window for a timely appeal. See id. (requiring that an appeal be brought within thirty days of a final judgment).
¶ 15 Although Respondents agree that the April 26, 2005 order was a final order, they argue that by entering further orders after April 26, 2005, the trial court "erroneously turned the April 26, 2005, order into an interlocutory order by virtue of post-April 26, 2005, law of the case." This argument, again, is unsupported by any legal analysis or citation to authority, and we are not entirely clear on what Respondents are intending to argue. To the extent that Respondents challenge the orders entered after the April 26, 2005 final order, we still may only address those orders that involve the merits or necessarily affect the portion of the August 16, 2005 order from which Respondents are appealing, i.e., their removal as directors and officers. But Respondents point to no orders entered during this periodbetween April 26, 2005, and August 16, 2005that were related to their removal. It instead appears from our review that these intermediate orders were wholly confined to the contempt matter. Thus, we may not address these intermediate orders. See Zions First Nat'l Bank, 931 P.2d at 144 (allowing an appellate court to reach only those intermediate orders "involving the merits or necessarily affecting" the final judgment appealed from).

III. Sanctions
¶ 16 Petitioner requests her costs and attorney fees on appeal, claiming both that the appeal is frivolous, see generally Utah R.App. P. 33(a), and that Respondents failed to adequately brief their arguments, see generally id. R. 24(k). "We recognize that sanctions for frivolous appeals should only be applied in egregious cases, lest there be an improper chilling of the right to appeal erroneous lower court decisions." Porco v. Porco, 752 P.2d 365, 369 (Utah Ct.App.1988). Thus, although this may well be a case in which sanctions for a frivolous appeal are warranted, we instead choose to award sanctions based on inadequate briefing.
¶ 17 Rule 24 of the Utah Rules of Appellate procedure sets forth appellate briefing requirements, including the requirement that the appellant's brief "contain the contentions and reasons of the appellant with respect to the issues presented, . . . with citations to the authorities, statutes, and parts of the record relied on." Utah R.App. P. 24(a)(9).
Failure to adhere to these requirements "`increase[s] the costs of litigation for both parties and unduly burden[s] the judiciary's time and energy.'" Failure to adhere to the requirements may invite the court to impose serious consequences, such as disregarding or striking the briefs, or assessing attorney fees against the offending lawyer.
*647 State v. Green, 2004 UT 76, ¶ 11, 99 P.3d 820 (alterations in original) (citation omitted). Petitioner points to several aspects of Respondents brief that fail to meet the briefing requirements and complains of the "convoluted" nature of Respondents' opening brief. We can see how, as Petitioner asserts, these problems have "placed a tremendous burden of factual and legal research on [Petitioner]." And, indeed, as Petitioner predicted, this court has "face[d] a similar burden," with many issues completely lacking in cogent analysis or supporting authority. "`[A] reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository in which the appealing party may dump the burden of argument and research.'" State v. Bishop, 753 P.2d 439, 450 (Utah 1988) (alteration in original), overruled on other grounds by State v. Menzies, 889 P.2d 393, 397-98 (Utah 1994); see also State v. Thomas, 961 P.2d 299, 305 (Utah 1998) ("While failure to cite to pertinent authority may not always render an issue inadequately briefed, it does so when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court."). To a large extent, Respondents' burden of argument and research was shifted to other entities, and we therefore award Petitioner her reasonable attorney fees under rule 24. See Utah R.App. P. 24(k).

CONCLUSION
¶ 18 We do not have jurisdiction over the one issue Respondents appeal from the August 16, 2005 order because that issue was decided in a previous trial court order and the simple reentry of that determination via the latter order does not restart the time for appeal. Nor do we have jurisdiction to reach any of the appealed issues arising from various intermediate orders made during this case's history. Thus, we may not address any of the issues that Respondents appeal, but must instead dismiss the appeal. We do, however, grant Petitioner her reasonable attorney fees in defending against this appeal and remand to the trial court for a determination of such amount.
¶ 19 WE CONCUR: RUSSELL W. BENCH, Presiding Judge and WILLIAM A. THORNE JR., Judge.
NOTES
[1] Indeed, Respondents seem to understand this timeliness requirement because in 2003 they did timely appeal the summary judgment order; but the issue Respondents now try to reach was not raised at that time. See Ninow v. Lowe (In re Estate of Pahl), 2004 UT App 291U, 2004 WL 1945746 (mem.).