2022 UT App 92

# THE UTAH COURT OF APPEALS

11500 SPACE CENTER LLC, SPACE CENTER BOULEVARD LAND
DEVELOPMENT LP, CULLEN'S LLC, AND BERMUDA DUNES
DEVELOPMENT LP,
Appellants,
*v.*
PRIVATE CAPITAL GROUP INC. AND PCG CREDIT PARTNERS LLC,
Appellees.

Opinion
No. 20200280-CA
Filed July 29, 2022

Third District Court, Salt Lake Department
The Honorable Kara Pettit
No. 180901188

Andrew G. Deiss and Seth A. Nichamoff,
Attorneys for Appellants

Jeremy C. Reutzel and Jarom R. Jones,
Attorneys for Appellees

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

TENNEY, Judge:

¶1    PCG Credit Partners LLC (Lender) entered into a loan agreement with 11500 Space Center LLC, Space Center Boulevard Land Development LP, Cullen's LLC, and Bermuda Dunes Development LP (collectively, Space Center). Private Capital Group Inc. (Servicer), an affiliate of Lender, serviced the loan.

¶2    After defaulting on the loan, Space Center sued Lender and Servicer, alleging several fraud-based claims and a breach of contract claim. The district court dismissed the fraud-based claims on the pleadings. After some discovery, it granted

summary judgment against Space Center on the breach of contract claim. Space Center now appeals both rulings. For the reasons set forth below, we affirm.

## BACKGROUND

### *The Loan and the Default*

¶3    Space Center is a collection of entities that own restaurants, commercial lots, and townhome lots in Texas. On February 18, 2015, Space Center entered into a loan agreement with Lender, a hard money lender. Real property located in Texas served as the "primary collateral for this loan."[1]

¶4    In the loan agreement, Lender agreed to loan up to $11,450,000 to Space Center. The parties further agreed that the loan would mature on June 18, 2015. And the parties also agreed that Space Center could, under certain circumstances, extend the loan.

¶5    The loan agreement detailed three fees "attributable to [Space Center] in relation to the origination and servicing of the Loan." Those fees were (1) a "[s]ervicing fee to [Servicer]" of $687,000, (2) a "[l]egal document fee to [Servicer]" of $16,000, and (3) a "[b]roker fee to [BlueCap] Commercial Funding, LLC" of $114,500.

¶6    The parties further agreed that there would be a "broker-fee reserve" of $114,500. That reserve would be used "to pay a

---

1. Although Space Center is a collection of Texas entities, Lender has a location in Alpine, Utah, and the parties agreed that their loan agreement would "be governed by and construed in accordance with the laws of the state of Utah."

portion of the broker fee [u]pon the full payment of the Note and full satisfaction of all of [Space Center's] obligations to Lender."

¶7      The loan agreement also included an "excess proceeds and funds" clause (Excess Proceeds Clause). In the Excess Proceeds Clause, the parties agreed that Lender would use "excess proceeds" to "reduce the principal balance of the [l]oan." But funds "identified for a specific purpose" in "any of the Loan Documents" were explicitly excluded from this clause.

¶8      On the day that the parties entered into the loan agreement, Space Center signed a settlement statement and a promissory note. The settlement statement, which was issued by the title company handling the escrow duties, detailed the fees associated with the loan and how they were allocated. In particular, the statement listed the "Servicing Fee (6%) – [Servicer]" of $687,000, the "Legal Document Fee – [Servicer]" of $16,000, and the "Broker Fee (1%) – BlueCap Commercial Funding, LLC" of $114,500. By signing this settlement statement, Space Center authorized the title company "to make expenditures and disbursements as shown and approve[d] the same for payment." In the promissory note, Space Center agreed that the loan "shall bear interest starting the date [Lender] first wires the funds into escrow, or the date indicated above, whichever is earlier." (Emphasis omitted.)

¶9      Interest began to accrue on February 18, 2015 (the day the parties signed the loan agreement), and Lender funded the loan upon closing on February 20, 2015. Per the loan agreement, the loan matured on June 18, 2015. Both parties agree that on June 18, 2015, Space Center had not repaid the loan principal of $11,450,000.

¶10     In August 2015, the parties began "negotiations concerning the fees owed by Space Center and a payoff to release certain collateral." In those negotiations, Space Center expressed its intent to borrow money from another lender to pay off a portion

of what it still owed. Servicer, however, voiced concerns over whether it would still get to hold certain property as collateral.

¶11 Lender ultimately agreed to release certain collateral if Space Center paid $190,000 "plus per diem interest." In the payoff statement detailing the collateral release agreement, Space Center "acknowledge[d] that the Note remain[ed] in default" and that Lender had "not waived any right, power or remedy available to it under the loan documents." In December 2015, Space Center paid $198,360 to release the agreed-upon collateral.

*Space Center Files Suit*

¶12 In March 2018, Space Center filed a complaint against Lender and Servicer in Utah state court.[2] Space Center alleged eleven claims in this complaint, including multiple fraud-based claims against both Lender and Servicer, as well as a breach of contract claim against only Lender.

¶13 With respect to the fraud-based claims, Space Center argued that under the contract, it was only required to pay fees that Lender had actually incurred, as opposed to the amounts listed in the loan agreement. It then alleged that Servicer "falsely represented to [Space Center's] and First American Title Company's representatives that [Lender] had in fact incurred . . . servicing fees of $687,000.00 and legal fees of $16,000.00." Space Center also alleged that "[Servicer] falsely represented the accrual of interest and amounts owed by [Space Center] to Lender." Relatedly, Space Center asserted that Lender was liable for Servicer's conduct "under the law of vicarious liability, including the doctrine of respondeat superior."

---

2. Space Center originally filed suit in Texas, but the case was dismissed for lack of personal jurisdiction. *See 11500 Space Center LLC v. Private Cap. Group, Inc.*, 577 S.W.3d 322 (Tex. App. 2019).

¶14    As for its breach of contract claim, Space Center alleged that Lender "materially breached" the loan agreement's Excess Proceeds Clause "by receiving excess proceeds and funds and failing to return" them to Space Center.[3]

*Motion to Dismiss the Fraud-Based Claims*

¶15    Lender and Servicer filed a joint motion to dismiss. In their motion, they argued that Space Center's claims were "precluded by the plain terms of the loan agreement" and "barred by the economic loss doctrine." (Quotation simplified.) They further argued that Space Center failed "to allege its fraud-based claims with the particularity required by rule 9[(c)] of the Utah Rules of Civil Procedure." (Quotation simplified.)

¶16    The court heard argument on the motion to dismiss. At that hearing, Space Center continued to assert its fraud and breach of contract claims, but it voluntarily dismissed its other claims.

¶17    The court later issued a ruling from the bench. In that ruling, the court dismissed Space Center's fraud-based claims for two reasons. First, the court concluded that those claims were "barred by the economic loss rule." Second and alternatively, the court concluded that those claims were "not pled with sufficient

---

3. At trial and on appeal, Space Center also argued that it never received the full proceeds of the loan. According to Space Center, this violated the "loan reserves" provision of the loan agreement. In response, Lender and Servicer maintain that the loan was fully funded but that a certain amount was "net funded." By "net funded," Lender and Servicer apparently mean that they were entitled to a portion of the loan amount, so they withheld that amount rather than "sending those funds to escrow" only to "have them returned in the same transaction." As we explain below, however, we decline to address the merits of Space Center's argument on this matter, so we need not delve further into its specifics.

particularity." In the court's view, the complaint was lacking because it didn't plead "with sufficient specificity" "the individual" who made the alleged misrepresentation (i.e., "the who"), nor did it identify "the what and the when regarding the alleged misrepresentation."[4] But the court declined to dismiss the breach of contract claim because it found that the Excess Proceeds Clause did not preclude the breach of contract claim "as a matter of law." The court later issued a written order memorializing this decision.[5]

*Partial Summary Judgment on the Breach of Contract Claim*

¶18   As noted, Space Center asserted that it was only required to pay fees that Lender had actually incurred. From this, Space Center asserted that fee payments that didn't go toward fees actually incurred should have been regarded as "excess proceeds" that Lender should have applied to the loan balance. And from that, Space Center argued that Lender had breached the Excess Proceeds Clause by not doing so.

¶19   After the court dismissed Space Center's fraud-based claims, Lender moved for summary judgment on Space Center's

---

4. The court also gave alternative reasons for dismissing the individual fraud claims, but those alternative reasons are not relevant to our resolution of this appeal.

5. Almost eight months after the court dismissed the fraud-based claims, Space Center filed a motion to reconsider, which the court denied. In its motion, Space Center argued that newly published Utah Supreme Court decisions justified reconsideration. But those cases, and Space Center's arguments, did not challenge the court's determination that Space Center failed to plead fraud with particularity. Because we ultimately affirm the district court on that ground, the arguments that Space Center made in its motion to reconsider are not relevant to our decision.

remaining claim for breach of contract. Among other things, Lender argued that "Space Center was obligated to pay the listed fees" and that there was nothing in the agreement to suggest that the fees had to represent actual costs incurred. (Quotation simplified.) Lender also contended that Space Center could not "prove the element of damages for its breach of contract claim." (Quotation simplified.) To support this, Lender attached a declaration by its accountant, wherein the accountant averred that, even under a "hypothetical accounting" that accepted all of Space Center's allegations as true, Space Center would still owe Lender money. In its opposition, Space Center responded with a number of arguments, and it also challenged the validity of Lender's hypothetical accountings.

¶20   After hearing argument on the motion for summary judgment, the court issued an oral ruling granting the motion in part and denying it in part. The court determined that the loan agreement was not ambiguous and that Space Center had unambiguously agreed to have the servicing and legal fees "attributed to" it. Moreover, in the court's view, nothing in the loan agreement required those fees to be actually incurred, and it was "really irrelevant what happened with those funds after they were paid." The court thus granted summary judgment based on the plain language of the loan agreement.

¶21   But the court did not grant summary judgment with regard to one aspect of Lender's motion. As explained above, the loan agreement required Space Center to pay a broker fee reserve and a broker fee in the same amount. The court determined that the broker fee was not actually an "agreed extra fee." The court then concluded that by paying the broker fee, Space Center had paid the broker fee reserve as well.

¶22   Given its resolution of the broker fee issue, the court declined to rule on Lender's claim that, even if Space Center's allegations were true, there were no damages. It instead ordered

supplemental briefing on the "remaining issue" of "whether Space Center suffered damages if the only charge it was not required to pay was the broker reserve in the amount of $114,500.00."

*Supplemental Briefing on the Breach of Contract Claim*

¶23   In its supplemental briefing, Space Center raised three arguments. First, it argued that Lender had "accepted $190,000 to extend the loan" and had promised to "reduce the extension fee." Second, it argued that Lender's accountant applied one of Space Center's payments "to induce default by applying the payment only to the principal balance." Finally, it argued that, even if it had defaulted, the "hypothetical accounting" failed "to timely apply loan reserves."

¶24   In response, Lender argued that, even if Space Center's arguments were correct, Space Center still could not show damages. In support of this claim, it included three hypothetical accountings from its accountant. Those hypothetical accountings showed that, even assuming Space Center's allegations as true, Space Center would still owe on the loan.

¶25   In response, Space Center argued that the hypothetical accountings were incorrect because they erroneously calculated the interest based on thirteen days of interest, when they should have been based on only twelve days. It further argued that the accountant "fail[ed] to apply the Loan Reserves to pay off the balance on August 20, 2015."

*Summary Judgment on the Remainder of the Breach of Contract Claim*

¶26   After the court heard argument on the supplemental briefing, it issued an oral ruling granting summary judgment in Lender's favor. There, the court first ruled that the loan was in default when it was not paid off on June 18, 2015. The court then rejected Space Center's argument that Lender did not timely

apply loan reserves. Based on those findings, the court concluded that Space Center had failed to show damages and that Lender was therefore entitled to judgment as a matter of law. The court later issued a written order, titled "Order Granting Defendant [Lender's] Motion for Summary Judgment," granting Lender's motion for summary judgment "in its entirety."

*Attorney Fee Litigation, Notice of Appeal, and Final Judgment*

¶27    On March 16, 2020 (two weeks after the court issued its written order granting summary judgment), Lender and Servicer filed a motion to recover costs and attorney fees.

¶28    On March 27, 2020, Space Center filed a notice of appeal. The notice stated,

> [Space Center] hereby appeal[s] to the Utah Supreme Court the final order of the Honorable Kara L. Pettit granting [Lender's] Motion for Summary Judgment, entered on March 3, 2020. The appeal is taken from the entire judgment, including all interlocutory orders.

When Space Center filed this notice, the district court had not yet ruled on Lender and Servicer's motion for costs and attorney fees.

¶29    On September 3, 2020, the court issued a written ruling granting Lender and Servicer's motion for costs and attorney fees. Later that same day, the court issued a document that it titled "Final Judgment." That document "awarded judgment" "in favor of [Lender] against Plaintiffs, jointly and severally," and it provided the judgment amount.

*Supplemental Briefing on Jurisdiction*

¶30    Pursuant to the previously filed notice of appeal, the case proceeded to this court, and we heard oral argument in

November 2021. At argument, members of the court raised questions about the scope of our appellate jurisdiction. At the close of argument, we directed the parties to provide supplemental briefing on two questions:

- First, given that there was a pending motion for attorney fees when Space Center filed its notice of appeal, should "what purported to be a notice of appeal . . . instead have been a petition for leave to take an interlocutory appeal"?

- Second, because Space Center specifically "identifie[d] the motion for summary judgment" in its notice of appeal, is this appeal limited to the question of whether the court incorrectly granted summary judgment, or can we also consider other prior rulings (including, notably, the ruling that dismissed the fraud-based claims)?[6]

ISSUES AND STANDARDS OF REVIEW

¶31    Given the jurisdictional concerns raised at oral argument, we first address which of Space Center's claims, if any, we have appellate jurisdiction over. This "presents a question of law." *Trapnell & Assocs., LLC v. Legacy Resorts, LLC*, 2020 UT 44, ¶ 29, 469 P.3d 989.

¶32    As explained below, we conclude that we have appellate jurisdiction over both of Space Center's claims. Because of this, we next consider Space Center's claim that the district court erred in dismissing Space Center's fraud-based claims. "Because the propriety of a motion to dismiss is a question of law, we review for correctness, giving no deference to the decision of the trial court." *Krouse v. Bower*, 2001 UT 28, ¶ 2, 20 P.3d 895. In this review,

---

6. In response to our directive, both parties filed supplemental briefs on these issues, and we thank the parties for their helpful assistance.

"we accept the factual allegations in the complaint as true and consider them, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party." *Id.*

¶33 Finally, we consider Space Center's claim that the district court erred when it granted summary judgment in Lender's favor. Summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). "Whether a [district] court appropriately granted summary judgment is a question of law." *Holmes Dev., LLC v. Cook*, 2002 UT 38, ¶ 21, 48 P.3d 895. In assessing the district court's decision, "we need review only whether the [district] court erred by applying the governing law and whether a material fact was in dispute." *Id.* "We thus review the [district] court's legal conclusions for correctness, according them no deference," and "we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Id.* (quotation simplified).

ANALYSIS

I. Appellate Jurisdiction

¶34 "We have an independent obligation to ensure that we have jurisdiction over all matters before us," and we "do not take lightly our responsibility to ensure we have proper jurisdiction before deciding a case." *Trapnell & Assocs., LLC v. Legacy Resorts, LLC*, 2020 UT 44, ¶ 31, 469 P.3d 989. As explained above, we asked for supplemental briefing on two issues related to appellate jurisdiction. First, we asked the parties to address the timeliness of Space Center's notice of appeal, given that there was a pending attorney fee motion when Space Center filed its notice. And second, we asked the parties to address whether Space Center had only properly appealed from the summary judgment ruling, or whether Space Center had also properly appealed the district

court's other orders (including the earlier dismissal of the fraud-based claims).

¶35 Having considered the supplemental briefing and the relevant law, we conclude that (A) Space Center's notice of appeal was timely and (B) Space Center properly appealed all of the district court's orders.

A.     Timeliness

¶36 Unless an exception applies, we only have jurisdiction over "a final order or judgment." Utah R. App. P. 3(a)(1); *see also Copper Hills Custom Homes, LLC v. Countrywide Bank, FSB*, 2018 UT 56, ¶¶ 10–15, 428 P.3d 1133. A judgment is final when it "adjudicates all claims and the rights and liabilities of all parties." Utah R. Civ. P. 54(a).

¶37 In past Utah practice, finality turned on the entry of a "decision on a dispositive motion," i.e., "a decision that adjudicated all claims involving all parties." *Griffin v. Snow Christensen & Martineau*, 2020 UT 33, ¶ 15, 467 P.3d 833. "But this practice generated questions as to when a particular decision was final." *Id.* So in 2015, certain amendments were made to rule 58A of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 58A advisory committee note to the 2015 amendments; *see also Griffin*, 2020 UT 33, ¶¶ 15–17. Of note, rule 58A(a) now states that "[e]very judgment and amended judgment must be set out in a separate document ordinarily titled 'Judgment'—or, as appropriate, 'Decree.'" Utah R. Civ. P. 58A(a). In this sense, after 2015,

> a separate 58A(a) judgment does not operate at the decision level. Rather, it operates at the case level to signal that all claims involving all parties have been resolved, to document the resolution of each claim and the rights and liabilities of all parties, and to start the clock for notices of appeal and post-judgment motions when it is signed and docketed.

*Griffin*, 2020 UT 33, ¶ 27.

¶38    In *Griffin*, our supreme court accepted the Third Circuit's "helpful description of what a proper separate judgment should look like" under rule 58A—namely, that "(1) the order must be self-contained and separate from the opinion; (2) the order must note the relief granted; and (3) the order must omit (or at least substantially omit) the District Court's reasons for disposing of the parties' claims." *Id.* ¶¶ 20–21 (quotation simplified).

¶39    *Griffin* also opined that "[t]o distinguish a judgment from an order or ruling," the document in question "should be identified accordingly." *Id.* ¶ 22. It thus mattered to the supreme court that the document in question in that case "was not titled 'Judgment,' but was instead named 'Order of Dismissal with Prejudice.'" *Id.* ¶ 23. The court regarded this as being more than "a mere technical deviation." Rather, it saw it as an indication that the document was a confirmation of a "particular ruling," as opposed to being "a separate judgment documenting the resolution of all claims in the district court." *Id.*

¶40    Thus, a rule 58A(a) "separate judgment, by definition, must be self-contained and independent from any other document in the case, including the decision that gave rise to it." *Id.* ¶ 24; *see also In re adoption of E.M.F.*, 2022 UT App 43, ¶ 12, 509 P.3d 214 (recognizing and applying the "separate document" requirement of rule 58A(a)). And in a departure from past practice, such a document is required even "if a decision disposes of all claims in the action." *Griffin*, 2020 UT 33, ¶ 26 (quotation simplified).

¶41    Here, the first jurisdictional question we raised has to do with the timing of Space Center's notice of appeal, and that question initially turns on when the district court issued the final judgment in this case. Space Center suggests that the court issued the final judgment on March 2, 2020, when it issued the ruling granting summary judgment (the March 2 Order). Space Center's

argument is not without some support. After all, it's true that the March 2 Order disposed of the final claims, and it's also true that it did not include much in the way of "procedural history, legal reasoning, and factual content" regarding the court's decision. *Griffin*, 2020 UT 33, ¶ 28. But even so, (1) the document was "not separate from the court's decision on the relevant motion," *id.*, but was instead the court's ruling on the motion for summary judgment itself, and (2) it was not "clearly identified as a judgment," *id.*, but was instead captioned as an "Order Granting Defendant [Lender's] Motion for Summary Judgment."

¶42     By contrast, the court subsequently issued a document on September 3, 2020, that fully complied with rule 58A(a)'s requirements. Unlike the March 2 Order, this document was separate from any ruling on any underlying motion, it did note the relief granted (stating that judgment had been entered in favor of Lender against Space Center and also stating the amount), and it was clearly identified as a judgment (indeed, it was actually titled "Final Judgment"). Given all this, we agree with Lender and Servicer that it was the September 3, 2020 document, not the March 2 Order, that constituted the final judgment in this case.

¶43     In light of this, the remaining question is whether Space Center filed a timely notice of appeal from that final judgment. As noted, Space Center filed its notice of appeal on March 27, 2020, some five months before entry of the final judgment. This was after the court had issued its March 2 Order granting summary judgment, but before the court issued the final judgment on September 3, 2020. Because of this, Space Center's notice of appeal was premature. *See* Utah R. App. P. 3(a)(1). However, our appellate rules provide that "[a] notice of appeal filed after the announcement of a decision, judgment, or order but before entry of the judgment or order shall be treated as filed after such entry and on the day thereof." *Id.* R. 4(c). We thus treat Space Center's notice as if it were filed on September 3, 2020, which is when the court entered final judgment.

¶44    Moreover, we further note that Lender and Servicer's motion for attorney fees does not alter this conclusion. That motion was filed on March 16, 2020. This was after the court's March 2 Order granting summary judgment, but it was before Space Center's notice of appeal—and, of course, also before the district court issued the final judgment on September 3, 2020. Notably, the court granted the motion for attorney fees on September 3, 2020, but it did so mere minutes before issuing the final judgment. Because of this, when the court entered the final judgment, there were no pending motions that would have prevented the judgment from being final.

¶45    In the supplemental briefing, the parties disagree about the potential application of rule 4(b)(2) of the Utah Rules of Appellate Procedure to this case. Under that rule, a "notice of appeal filed after announcement or entry of judgment, but before entry of an order disposing of any motion listed in paragraph (b)"—which, notably, includes a request for attorney fees under rule 73 of Utah Rules of Civil Procedure—"shall be treated as filed after entry of the order and on the day thereof, except that such a notice of appeal is effective to appeal only from the underlying judgment." Utah R. App. P. 4(b)(2); *see also id.* R. 4(b)(1)(F). But as explained, the court granted Lender and Servicer's motion for attorney fees before it entered final judgment. Rule 4(b)(2) is thus inapplicable, and the operative rule is instead rule 4(c). And under that rule, while Space Center's notice of appeal was premature, it's still "treated as" having been filed "on the day" the court issued its final judgment. *Id.* R. 4(c). As a result, Space Center's notice was timely.

B.    Scope

¶46    This leads to the second jurisdictional question we raised, which concerns the scope of Space Center's notice of appeal.

¶47    Rule 3(d) of the Utah Rules of Appellate Procedure states that a "notice of appeal must . . . designate the judgment, order,

or part thereof being appealed." This "requirement is jurisdictional." *Jensen v. Intermountain Power Agency*, 1999 UT 10, ¶ 7, 977 P.2d 474. And "the object of a notice of appeal is to advise the opposite party that an appeal has been taken from a specific judgment in a particular case." *Pulham v. Kirsling*, 2019 UT 18, ¶ 23, 443 P.3d 1217 (quotation simplified). "As a result, an order not identified in the notice of appeal falls beyond this court's appellate jurisdiction." *Pulham v. Kirsling*, 2018 UT App 65, ¶ 28, 427 P.3d 261 (quotation simplified), *aff'd*, 2019 UT 18.

¶48    But rule 3(d) does "not require a party appealing from an entire final judgment to specify each interlocutory order of which the appellant seeks review." *Zions First Nat'l Bank, NA v. Rocky Mountain Irrigation, Inc.*, 931 P.2d 142, 144 (Utah 1997) (quotation simplified). "Thus, when an appeal is taken from a final judgment, there is no requirement that the notice designate intermediate orders which are to be raised as issues on appeal." *Wilson v. Sanders*, 2019 UT App 126, ¶ 28, 447 P.3d 1240 (quotation simplified). In this sense, when an "intermediate order of the court constitutes one link in the chain of rulings leading to a final judgment, [an] appellant is entitled to challenge it based on a notice of appeal identifying the final order." *Freight Tec Mgmt. Group Inc. v. Chemex Inc.*, 2021 UT App 92, ¶ 22, 499 P.3d 894 (quotation simplified).

¶49    Here, Space Center's notice of appeal stated,

> [Space Center] hereby appeal[s] to the Utah Supreme Court the final order of the Honorable Kara L. Pettit granting [Lender's] Motion for Summary Judgment, entered on March 3, 2020. The appeal is taken from the entire judgment, including all interlocutory orders.

¶50    At oral argument and again in our request for supplemental briefing, we asked whether the notice of appeal's reference to the court's ruling on "[Lender's] Motion for Summary

Judgment" limits our jurisdiction to a review of that ruling. On further consideration (and including consideration of the arguments put forward in the supplemental briefing), we conclude that we do have jurisdiction to address the other rulings as well.

¶51 Although the notice did identify "the final order . . . granting [Lender's] Motion for Summary Judgment," it then stated that "[t]he appeal [was] taken from the *entire judgment*, including all interlocutory orders." (Emphasis added.) By explicitly stating that it was appealing "the entire judgment," Space Center provided notice to Lender and Servicer that it intended to also appeal any prior rulings that constituted a "link in the chain of rulings leading to" the final judgment, thereby allowing it to challenge any such ruling "based on [its] notice of appeal identifying the final order." *Freight Tec Mgmt. Group*, 2021 UT App 92, ¶ 22 (quotation simplified).

¶52 Further, Space Center's wording makes this case distinguishable from *Pulham*. There, the supreme court gave a limited construction to a notice of appeal. But it did so because the notice of appeal had specifically stated that the appeal was "taken from such parts of the judgment as follows," after which the notice identified three particular paragraphs from the divorce decree in question. *Pulham*, 2019 UT 18, ¶ 24 (quotation simplified). Because of the party's enumerated list, the supreme court held that "nothing in the notice of appeal indicated an intent to appeal from any other portions of the Amended Decree" (or any other ruling), and the court did so based on a rule under which a "notice of appeal that specifies only part of a final judgment will not suffice to appeal other parts of the judgment (or other orders merged therein)." *Id.* ¶¶ 29–30 (quotation simplified).

¶53 Here, the notice of appeal would have been clearer without the initial reference to the summary judgment ruling. And in

fairness to Space Center, we suspect that this reference was prompted by the prior Utah practice norms discussed above, under which that summary judgment ruling would arguably have been the final judgment (because it disposed of all the claims at issue in the suit). But regardless, what ultimately matters here is that the notice of appeal then stated that Space Center was appealing "the entire judgment, including all interlocutory orders." In light of this additional line, we conclude that this was not a limited notice of appeal of the sort at issue in *Pulham*, but that it was instead intended to be (and in fact was) an appeal from the final judgment. As a result, we conclude that we do have appellate jurisdiction to review "the entire judgment, including all interlocutory orders."

## II. Fraud-Based Claims

¶54    As explained, the district court dismissed Space Center's fraud-based claims because they were "barred by the economic loss rule" and, alternatively, because they were "not pled with sufficient particularity." We agree that Space Center did not plead its fraud-based claims with particularity. Because of this, we need not address the court's alternative ruling that the economic loss rule barred Space Center's claims. *See Robinson v. Robinson*, 2016 UT App 33, ¶ 55, 368 P.3d 105.

¶55    As set forth by our supreme court, the elements of a fraud claim are

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7)

did in fact rely upon it (8) and was thereby induced
to act (9) to that party's injury and damage.

*Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35 (quotation simplified).

¶56    By rule, fraud has its own pleading requirement—namely, when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Utah R. Civ. P. 9(c). The rule's use of the term "must," of course, means that this is a mandatory command. *See In re adoption of M.L.T.*, 746 P.2d 1179, 1180 (Utah Ct. App. 1987).

¶57    To satisfy this particularity requirement, a plaintiff must set forth "the relevant surrounding facts . . . with sufficient particularity to show what facts are claimed to constitute such charges." *Armed Forces Ins. Exch.*, 2003 UT 14, ¶ 16 (quotation simplified); *see also Carlton v. Brown*, 2014 UT 6, ¶ 38, 323 P.3d 571 (noting that "only a sufficiently clear and specific description of the facts underlying the plaintiff's claim of fraud will satisfy the requirements of rule 9[(c)]" (quotation simplified)). The "relevant surrounding facts" must typically include "the who, what, when, where, and how." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

¶58    In the fraud portions of its complaint, Space Center asserted that Servicer and Lender made fraudulent misstatements to Space Center's representatives during the negotiations for the loan and then again at closing. Of note, Space Center alleged the following[7]:

---

7. Our discussion of the particularity requirement turns on the precise language used in the complaint. Because of this, when quoting the complaint in this paragraph and in paragraph 60, we'll quote Space Center verbatim, without using the "Servicer"

(continued…)

- "[A]t closing Agent PCG represented to Plaintiffs and First American Title Company that Lender PCG Partners had in fact incurred servicing fees of $687,000.00, brokerage fees in the amount of $114,500.00 and legal fees of $16,000.00 in connection with the origination and servicing of the Loan."

- "When preparing the Loan Agreement, Agent PCG falsely represented to Plaintiffs that fees of $687,000 were attributable to the Loan as there existed no obligation by Lender PCG Partners to pay Agent PCG fees of $687,000 for the loan."

- "Plaintiffs were led to believe that Agent PCG was charging Lender PCG Partners for services as part of a commercial relationship between Agent PCG and Lender PCG Partners."

- "Plaintiffs would not have paid Agent PCG fees of $687,000 but for Agent PCG's misrepresentation regarding its fees."

¶59 The problem with these allegations is that Space Center did not plead with particularity who said what to whom. We have previously held that the "identity of the person who made the alleged misrepresentation" is a "relevant surrounding fact[]." *Webster v. JP Morgan Chase Bank, NA*, 2012 UT App 321, ¶ 19, 290 P.3d 930 (quotation simplified); *see also Shah v. Intermountain Healthcare, Inc.*, 2013 UT App 261, ¶ 12, 314 P.3d 1079 (holding that fraud claims were not pleaded with particularity, in part, because the plaintiffs failed "to explain" "which defendants made what

---

and "Lender" labels that we've employed elsewhere to improve readability of this opinion. As a reminder, we again note that Space Center's complaint used "Agent PCG" to refer to Private Capital Group Inc., which we identify elsewhere as "Servicer." Space Center also used "Lender PCG Partners" to refer to PCG Credit Partners LLC, which we identify elsewhere as "Lender." And the term "Plaintiffs" referred to Space Center.

statements"); *Coroles v. Sabey*, 2003 UT App 339, ¶ 28, 79 P.3d 974 ("Certainly one requirement for pleading fraud with particularity is to identify the offender."). And one of the reasons that it's also necessary to identify the recipient of the alleged misstatements is that the recipient's identity can be critical to fraud's reliance element. In *Coroles*, for example, we held that the plaintiffs did not sufficiently plead reliance because they had failed to allege which of the many listed plaintiffs "read or even saw" the allegedly fraudulent documents. 2003 UT App 339, ¶¶ 29–30 (quotation simplified). Tying these together, one of the reasons for requiring particularity about the identities of both the speaker and the recipient is that this information is necessary for the defendant to be able to investigate and then prepare a response (i.e., to ascertain whether the alleged statements were in fact made), and another (and yet related) reason is that a court would need this same information when determining whether the statements were actually made.[8]

---

8. We acknowledge the possibility that there may be some scenarios in which a plaintiff cannot identify the speaker of the fraudulent misrepresentations. *Cf. Reed v. Wells Fargo Bank*, No. C 11-00194 JSW, 2012 WL 2061623, at *2 (N.D. Cal. June 7, 2012) ("Although Plaintiffs do not identify the loan officer by name, they explain their inability to do so prior to obtaining discovery."). And such scenarios would likely include situations in which a plaintiff is alleging fraud by omission. *Cf. Belville v. Ford Motor Co.*, 60 F. Supp. 3d 690, 697 (S.D. W. Va. 2014) (suggesting that a "more relaxed standard . . . should apply in omission cases because a plaintiff cannot be required to specifically identify the precise time, place, and content of an event that did not occur"). Though we need not definitively decide the issue here, we do acknowledge that in such a case, this component of the particularity requirement may arguably be relaxed.

(continued…)

¶60 Here, beyond vague references to "Agent PCG," Space Center failed to identify who made the representations. And while Space Center also alleged that the representations in question were made to "Plaintiffs," it failed to identify with any particularity who the recipients of the alleged misstatements were. Without this information, it is unclear "what facts are claimed to constitute" the fraud charges. *Armed Forces Ins. Exch.*, 2003 UT 14, ¶ 16 (quotation simplified). And without that information, Servicer and Lender could not adequately respond to Space Center's claims and defend themselves, nor could a court ultimately rule on these claims. As a result, rule 9(c)'s particularity requirement was not satisfied, and the district court therefore did not err in dismissing Space Center's fraud-based claims.[9]

---

But here, Space Center did not allege or argue that it was unable to identify the speaker. (And on the facts presented, we fail to see how it reasonably could have argued that, given that its fraud-based claims center on conversations and meetings that its representatives were a part of.) Moreover, as explained below, Space Center's fraud by nondisclosure claim lacked particularity not because it did not identify a speaker, but because it did not identify a duty.

9. Aside from particularity, a few final notes are in order regarding other aspects of Space Center's fraud-based claims. First, in some portions of its complaint and appellate brief, Space Center seems to suggest that certain provisions within the loan documents themselves constituted fraud. Though somewhat unclear, we understand Space Center to be pointing to the "loan fees" provision of the loan agreement. As explained above, in that provision, the loan agreement lists the servicing, legal, and broker fees, including their amounts. As noted, however, fraud requires proof of a misstatement of "a presently existing material fact." *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35

(continued…)

## III. Breach of Contract Claim

¶61 After the court granted Lender and Servicer's motion to dismiss, Space Center's only remaining claim was for breach of contract against Lender. The court then granted summary judgment to Lender after determining that Space Center had not

---

(quotation simplified). We don't read the "loan fees" provision as being an assertion of fact; rather, we read it as being a list of fees that Space Center agreed to pay, much like a processing fee or a shipping-and-handling fee. Space Center points to no authority, and we're aware of none, under which the terms of a contract or loan (as opposed to a factual misstatement within the relevant document) can be characterized as the factual misstatement that supports a fraud complaint.

Second, in a related vein, Space Center suggests that Servicer and Lender committed fraud by, at times, asserting their view that certain things were or were not required by the loan. But again, fraud requires proof of a misstatement of fact. While Space Center was certainly entitled to litigate its competing interpretation of the loan in a breach of contract action, we see no legal support for its assertion that a party can be charged with fraud based on its expression of its view of how a contract should be interpreted.

Finally, Space Center alleged that Servicer committed fraud by nondisclosure by failing "to disclose certain facts to Plaintiffs regarding the loan transaction, including but not limited to the actual fees, costs, and expenses for or incurred by" Lender. But a "defendant's failure to disclose must implicate the breach of a duty to be actionable." *Fidelity Nat'l Title Ins. Co. v. Worthington*, 2015 UT App 19, ¶ 13, 344 P.3d 156. Where a complaint "does not identify what duty" allegedly required the defendant to disclose the information in question, the fraud claim fails for lack of particularity. *Id.* This is the case here, where Space Center "did not identify any duty" that Servicer or Lender "breached by failing to disclose" the information in question. *Id.* ¶ 14.

raised a genuine dispute as to damages. *See* Utah R. Civ. P. 56(a) (explaining that summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact"); *Eleopulos v. McFarland & Hullinger, LLC*, 2006 UT App 352, ¶ 10, 145 P.3d 1157 ("A breach of contract claim requires four essential elements of proof, one of which is damages.").

¶62   Space Center now challenges that determination on appeal, and it makes a host of arguments in support of its position. We have reviewed Space Center's arguments, and we conclude that they're each meritless. Three of them, however, warrant brief discussion. *See Carter v. State*, 2012 UT 69, ¶ 16 n.7, 289 P.3d 542 (holding that a "court need not analyze and address in writing each and every argument, issue, or claim raised" and recognizing the "maxim of appellate review that the nature and extent of an opinion rendered by an appellate court is largely discretionary with that court" (quotation simplified)); *accord Collum v. State*, 2015 UT App 229, ¶ 12, 360 P.3d 13 (per curiam).

¶63   First, Space Center argues that the district court erred when it determined that Lender was entitled to the servicing and legal fees, even if those fees did not represent costs actually incurred. On this, however, the loan agreement itself simply states that a servicing fee of $687,000 and a legal fee of $16,000 were "attributable to" Space Center. And the parties' settlement statement was likewise clear that these fees would be charged to Space Center. Space Center has pointed to nothing in the loan agreement or the settlement statement suggesting that it was only obligated to pay fees actually incurred, as opposed to these fees that were explicitly listed and attributable to it. The court therefore did not err when it saw no genuine dispute of material fact as to Lender's entitlement to those fees. *See Basic Rsch., LLC v. Admiral Ins. Co.*, 2013 UT 6, ¶ 5, 297 P.3d 578 (holding that "when the existence of a contract and the identity of the parties are not in issue and when the contract provisions are clear and complete, the

meaning of the contract can be resolved by the court on summary judgment" (quotation simplified)).

¶64 Second, Space Center argues that the court erred by not recognizing that Lender "orally and in writing promised to extend the loan for a fee of $190,000" and that "Space Center paid this extension fee." But the agreement that Space Center refers to was a collateral release agreement, not a loan extension. In that agreement, Lender simply agreed to release certain collateral in exchange for $190,000 plus interest, and Space Center acknowledged that the loan still "remain[ed] in default" and that Lender had not "waived any right, power or remedy available to it under the loan documents" by entering into that collateral release agreement. The court therefore did not err in concluding that there was no genuine dispute of fact regarding this agreement. *See id.*

¶65 Third, Space Center argues that Lender's accountant incorrectly assumed that the loan began accruing interest on February 18, 2015. Space Center contends that interest should have started to accrue on February 20, 2015, when the loan was actually funded. In the promissory note, however, the parties agreed that the loan would "bear interest starting the date [Lender] first wires the funds into escrow, or the date indicated above, whichever is earlier." February 18, 2015, was the "date indicated above," so it was appropriate for the accountant to use that date in her calculations. Space Center has thus shown no genuine issue of material fact in this regard either. *See id.*

¶66 In short, because Space Center did not present a genuine dispute of material fact regarding damages, Lender was "entitled to judgment as a matter of law." Utah R. Civ. P. 56(a); *see also Eleopulos*, 2006 UT App 352, ¶ 9 ("In order to preclude the entry of summary judgment on claims for breach of contract . . . , Plaintiffs must raise material issues of fact pertaining to actual damages.").

CONCLUSION

¶67 The district court appropriately dismissed Space Center's fraud-based claims because those claims were not pleaded with sufficient particularity. And the court appropriately granted summary judgment when Space Center failed to show a genuine dispute of fact regarding damages. We therefore affirm.

——————